**Curtis L. WRENN, Plaintiff-Appellant, Cross-Appellee,**

v.

**Sylvester M. GOULD, Jr., Individually and as President, Cordelia Martin Health Center; Neighborhood Health Association of Toledo, Inc., d/b/a Cordelia Martin Health Center, Defendants-Appellees, Cross-Appellants.**

**Nos. 85–3285, 85–3315.**

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 5, 1986.

Decided Jan. 9, 1987.

Curtis Wrenn, pro se.

Tybo Alan Wilhelms, Bugbee & Conkle, Toledo, Ohio, for defendants-appellees, cross-appellants.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

RYAN, Circuit Judge.

This is a civil rights action in which the plaintiff, Curtis L. Wrenn, seeks damages from the Neighborhood Health Association of Toledo, Inc., d/b/a Cordelia Martin Health Center (the Center), a publicly funded health care facility serving the indigent

of Toledo, Ohio, and its President, Sylvester M. Gould, Jr. The district court dismissed the Title VI (42 U.S.C. § 2000d *et seq.*) claim against the Center, and all of the claims, Title VI and Title VII, against Gould individually, and entered judgment in favor of the Center on plaintiff's Title VII (42 U.S.C. § 2000e–3) retaliation claim.

Wrenn appeals all of those dispositions, and the Center cross-appeals the district court's refusal to award it attorney fees following its successful defense of the Title VII retaliation claim. It also seeks attorney fees for its defense of this appeal.

The litigation derives from Wrenn's unsuccessful effort to be hired as executive director of the Center. The issues before us are whether Wrenn proved that he was rejected for the executive director's position in retaliation for having filed an earlier civil rights claim against a previous employer, and whether the Center is entitled to attorney fees on the theory that the plaintiff's suit and appeal are groundless. Because we answer both questions in the negative, we affirm the decision of the district court.

## I.

### The Facts

The Center is a not-for-profit corporation providing health care for the ambulatory poor of Toledo, Ohio. It is governed by a board of trustees consisting of twenty-four volunteers. Sylvester Gould, the individual defendant, was the president of the board.

In 1981, the Center sought to fill its vacant executive director position. The Center created a search committee to screen applications and interview qualified candidates. In order to reduce the number of clearly unqualified applicants, the committee published "required qualifications" in an advertisement soliciting applicants for the position. Two of the listed qualifications were that the applicant have earned a master's degree in public health, hospital administration, or business administration, and that the applicant have five years' "progressive management experience." Wrenn was the only individual applying for the position who had earned a master's degree in one of the required fields. He did not have five years' progressive management experience.

Wrenn was one of approximately nine applicants granted an interview with the search committee. During his interview, Wrenn volunteered that he had been discharged from his position with the Toledo Mental Health Care Center and was currently litigating that dispute with the Ohio Department of Mental Health and Retardation. During the hour-long interview, the interviewers questioned Wrenn for five to ten minutes about whether Wrenn could effectively solicit funding on behalf of the Center from the state while suing it. Wrenn answered that his lawsuit would be no obstacle to securing state funding for the Center. The members of the search committee testified that they were satisfied with his answers, asked no more questions concerning the litigation, and did not raise the subject in their later conference when discussing Wrenn's application.

Upon completion of the nine or so interviews, the Center extended an offer to the person they regarded as most qualified, Vanu Bagchi; however, the Center could not meet Bagchi's financial requirements and the offer was rejected. The position was then offered to the number two candidate, a "gentleman from Cleveland," whose name no one could recall. This gentleman also turned down the offer.

The Center's third choice was Barbara L. Hill. Hill had been the assistant to the former executive director, R. Morrison Borders. When Borders resigned, Ms. Hill became the acting executive director. Borders highly recommended Ms. Hill for the permanent position of executive director, and her former employer, Hough-Norwood Family Health Care Center, gave her a glowing recommendation. Further, the staff of the Center petitioned the board to give the position to Ms. Hill, stating:

"We are the one's who work with her, we are the one's who are in a position to be her biggest critics, therefore we know—we need and want Barbara Hill, but more important, we feel Mrs. Hill is

more than totally qualified, and your only choice for Executive Director.... "... [W]e request that this letter be presented to the full board for their consideration; showing our total support for Barbara L. Hill as Executive Director...."

According to the testimony, Ms. Hill also had the following circumstances commending her appointment as executive director: Her appointment would boost employee morale greatly, while morale had been a major problem at the Center; she had been performing as acting executive director satisfactorily and required no assistant, thereby saving the Center the expense of having an administrative assistant; she had been working on the renovation of the Center, and a change in executive directors might disrupt that work; she would require no training or "break-in" time; she had prepared the grant application for the Center's future funding, and had brought the Center's performance indicators into compliance with federal requirements; and she had established extensive and positive working relationships with the federal and state officials responsible for the Center's future funding.

Ms. Hill was given the position and Wrenn was notified that Ms. Hill had been hired because the Center felt she best met their needs at that time. Shortly thereafter the Center, spurred by an anonymous letter they received, began an investigation into Ms. Hill's credentials. The Center dismissed her when they discovered she had misrepresented her educational attainments.

## II.

### Proceedings Below

Claiming that the Center and its president, Sylvester Gould, had discriminated

against him in this hiring process, and having exhausted the available administrative remedies,[1] Wrenn filed two suits against defendants. One of the lawsuits advanced an unlawful age discrimination claim. Wrenn voluntarily dismissed that suit when faced with the fact Hill was older than he.[2]

The other lawsuit, the one before us, proceeded to trial. One of the original claims in the complaint was under Title VI, which prohibits discrimination by a recipient of federal grants where a primary objective of the federal financial assistance is to provide employment. 42 U.S.C. § 2000d–3; *Moxley v. Vernot*, 555 F.Supp. 554, 557–58 (S.D.Ohio 1982); *see also Valentine v. Smith*, 654 F.2d 503, 511–12 (8th Cir.1981), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87 (4th Cir.1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979).

On the strength of the uncontradicted affidavit of the Center's newest executive director, Althea Baldwin, which stated that the Center does not have a primary purpose of providing employment, plaintiff's counsel conceded that "defendants' motion [to dismiss plaintiff's Title VI claim] is well taken and should be granted." The court entered judgment accordingly. Wrenn appeals that judgment.

Another of plaintiff's claims was that he had been the victim of racial discrimination in employment in violation of 42 U.S.C. § 1981 when his application for executive director was rejected and Ms. Hill was hired. Upon discovering that Ms. Hill was, like Wrenn, black, Wrenn dismissed this claim as well.

At the conclusion of trial, plaintiff's counsel also consented to dismissal of all

---

**1.** The Equal Employment Opportunity Commission issued Wrenn a Right to Sue notice on June 1, 1982. Wrenn also filed a complaint with the Ohio Civil Rights Commission, which found "no probable cause" of discrimination on January 27, 1983.

**2.** Wrenn is a most litigious individual. Defendants list thirty-nine lawsuits plus numerous oth-

er administrative actions Wrenn filed against a total of 152 defendant entities. Plaintiff filed three discrimination/retaliation cases which were recently heard before the Sixth Circuit. One of these cases, *Wrenn v. Wernert*, 765 F.2d 147 (1985) (unpublished), proceeded on nearly identical facts and legal issues.

claims against Sylvester Gould. The district court inquired of plaintiff's counsel whether he joined in the motion to dismiss the several claims against Gould. Plaintiff's counsel stated unequivocally that although he had not done so earlier, "We would join in that," thus limiting the case to the corporation. Wrenn now appeals this dismissal.

In view of the foregoing, only Wrenn's Title VII (42 U.S.C. § 2000e–3(a)) retaliation claim was litigated. The retaliation claim is based upon the theory that the Center refused to hire Wrenn in retaliation for the racial discrimination action he previously filed against the Toledo Mental Health Center after he was dismissed from its employ.

At the conclusion of the bench trial, the district court prepared carefully written and fully reasoned findings of fact and conclusions of law in which it held, inter alia, that although the plaintiff had established a prima facie case of discriminatory retaliation, the defendant had rebutted plaintiff's prima facie case by "providing . . . evidence" of nondiscriminatory reasons for hiring Ms. Hill instead of plaintiff, and thus the plaintiff had failed to carry his burden of showing such non-discriminatory reasons to be pretextual. The court thereupon entered judgment for the defendant. Finding that "plaintiff's commencement of and prosecution of this cause was not 'frivolous, unreasonable or without foundation'," the court declined to award attorney fees to the defendant.

There followed the plaintiffs' appeal and the defendants' cross-appeal.

### III.

#### The Title VI Claims

Wrenn, appearing here *pro se*, first challenges the district court's dismissal of his Title VI claims on the irrelevant grounds that:

> "The decision of the District Court to dismissed [*sic*] Appellant's Title VI claim is clearly in error. . . . [because] Appel-

**3.** Gould was represented at trial by counsel.

lant has attempted . . . to exhaust the administrative remedies of Title VI."

The defendants did not, at any time, contend that the district court held that plaintiff failed to exhaust his administrative remedies. Rather, the district court dismissed the Title VI claims because Wrenn, through his attorney, recognized that the claims had no foundation and voluntarily consented to dismissal.

> "Now comes the plaintiff . . . and submits the following by way of a response to defendant's [*sic*] . . . motion to dismiss plaintiff's Title VI claims. . . . [I]t appears that defendants' motion is well taken and should be granted."

■ The district court was well within its authority under Fed.R.Civ.P. 41(a) in accepting Wrenn's decision to dismiss. Plaintiff submits no reason for this court to set aside his volunteered dismissal, and we decline to do so.

### IV.

#### Claims Against Sylvester Gould

Wrenn next challenges the district court's dismissal of his actions against defendant Gould on the irrelevant ground that:

> "The District Court clearly exceeded its authority when it dismissed . . . Gould. . . . It was not the responsibility of Plaintiff-Appellant to have Defendant Gould appear at the trial, and since he did not appear the Appellant should have been awarded judgment by default. . . ." [3]

The district court dismissed all of Wrenn's claims against Gould because Wrenn, through his attorney, explicitly joined in the plaintiff's motion to voluntarily dismiss those claims.

■ Wrenn suggests no basis for this court to set aside the dismissal of the claims against Gould, and we decline to do so.

## V.

### Title VII Claims Against the Center

We turn then to Wrenn's claim that the district court erred in entering judgment for the Center upon Wrenn's claim of unlawful retaliatory discrimination in passing him over to hire Ms. Hill.

██ When reviewing the district court's factual findings in a Title VII discrimination case, we may not reverse unless we find that the district court committed clear error. *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):

> "If the district court's account of the evidence is plausible ... the court of appeals may not reverse it even though ... it would have weighed the evidence differently."

*Id.* 470 U.S. at 573, 105 S.Ct. at 1512, 84 L.Ed.2d at 528. Although this is true of all findings of fact in a Title VII action, credibility determinations require even greater deference:

> "[W]hen a trial judge's finding is based on his decision to credit the testimony of one or two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."

*Id.* 470 U.S. at 575, 105 S.Ct. at 1513, 84 L.Ed.2d at 529–30. *See also West v. Fred Wright Construction Co.,* 756 F.2d 31 (6th Cir.1985).

Furthermore, the Ohio Civil Rights Commission finding "no probable cause" of discrimination should be accorded substantial weight, *Cooper v. Philip Morris, Inc.,* 464 F.2d 9 (6th Cir.1972). *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

## A.

██ Wrenn makes several arguments that can be disposed of rather quickly. He first argues that the fact that the candidate eventually hired, Ms. Hill, is, like Wrenn, a black person is irrelevant to his retaliation claim. He further claims the Center's hiring of Ms. Hill was merely an afterthought on defendant's part after the two "preferred" "non-minority" candidates rejected the Center's offer. For this argument he relies on several race discrimination cases stating that as long as "racial reasons" were the root of the disparate treatment, the race of the successful applicant does not, in itself, defeat a plaintiff's prima facie case. While we do not question the correctness of the rule, it has no application here for at least two reasons. First, the record does not support plaintiff's contention that the preferred candidates, Vanu Bagchi and the "unknown gentleman from Cleveland," were "non-minorities." Second, the argument is irrelevant because neither the district court nor defendants relied upon Ms. Hill's race to deny Wrenn's retaliation claim. Therefore, we need address those arguments no further.

Next, Wrenn argues that an employment practice need not be unlawful in itself to violate Title VII. We need not reach this question, as the district court's decision rested solely upon its finding that the Center's employment decision was not pretextual, not on whether it was illegal.

██ Wrenn next argues that the district court's decision in this case is "inconsistent" with this court's decision in *Wrenn v. Wernert,* 765 F.2d 147 (6th Cir.1985).[4] We merely observe that the district court's decision is not inconsistent with *Wernert.* The portions of *Wernert* cited to us by Wrenn deal with Wrenn's allegations of *race* discrimination and merely list some of the many non-pretextual reasons Wernert and Mental Health Emergency Services re-

---

4. *Wernert* is an unpublished per curiam opinion and should not have been cited as precedent by plaintiff. Sixth Circuit Rule 24 limits citation of unpublished per curiam opinions to specific situations. If cited, a copy of the opinion must be served on the court. Plaintiff did not serve a copy of the decision on the court and otherwise failed to comply with Rule 24 before citing *Wernert* in his brief.

fused to hire Wrenn. The opinion does not purport to exhaustively list all the possible non-pretextual grounds upon which an employer may reject an applicant.

Furthermore, in dealing with Wrenn's retaliation claim in *Wernert,* the Sixth Circuit adopted District Judge Potter's holding that:

> " 'Finally, the Court will grant defendants summary judgment on plaintiff's claims of retaliation under Title VII.
> " 'The affidavit[s] of ... Wernert and ... Prebe ... both indicate that the fact that plaintiff had filed discrimination charges against the Ohio Department of Mental Health was not considered during the selection process. In light of these affidavits, the Court finds that plaintiff's deposition testimony fails to raise genuine issues of material fact....' "

*Id.* The facts of *Wernert* are virtually identical to those in the case at bar vis-a-vis the retaliation claim. Wrenn had claimed that the defendants in that case had refused to hire him because he had earlier filed suit against the Ohio Department of Mental Health and Retardation. In both *Wernert* and this case, the affidavits of the many people involved in the selection process stated that Wrenn's previous suit filing had no effect whatever upon the decision not to hire him. The only inconsistency between *Wernert* and the district court's decision in this case operates in Wrenn's favor. The *Wernert* court summarily disposed of Wrenn's retaliation claim, finding no causal link. In this case, however, the district court found that Wrenn had established a prima facie case of retaliatory nonhiring, but had failed to show that the Center's proffered reasons for not hiring him were pretextual.

**B.**

The sole issue in this case warranting extensive consideration on Wrenn's appeal is whether the district court's finding that the Center's reasons for hiring Ms. Hill rather than Wrenn were not pretextual is clearly erroneous.

Wrenn begins his *pro se* argument with the incorrect assertion that the Center had the burden of proving that its reasons for hiring Ms. Hill were non-pretextual. That claim simply misconstrues the proper allocation of the burden of proof in Title VII cases.

■ Federal law proscribes discrimination against an applicant for making charges opposing racially discriminatory employment practices. *See* 42 U.S.C. § 2000e–3. Proof of a retaliation claim under Title VII is governed by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. It is elemental that the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The now familiar labyrinthine course of shifting burdens in Title VII cases begins with the plaintiff's duty to establish a prima facie case by showing such facts as give rise to an inference of unlawful discrimination. That is a burden easily met. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977).

In *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982), the Ninth Circuit set forth the following elements as establishing a prima facie retaliation claim: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See also Burrus v. United Telephone Co.,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Smalley v. City of Eatonville,* 640 F.2d 765, 769 (5th Cir.1981); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814

(1981); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). The Tenth Circuit has held this "causal connection" may be demonstrated by the proximity of the adverse action to the protected activity. *Burrus,* 683 F.2d at 342.

■ The district court correctly found that Wrenn's proofs established a prima facie case. That being so, the burden of proceeding with the evidence then shifted to the Center to "articulate some legitimate, nondiscriminatory reason" for its decision to hire Ms. Hill rather than Wrenn. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978). Even though the burden of going forward with evidence to answer Wrenn's prima facie case, once established, moved to the Center, the ultimate burden of persuasion never shifted from the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir.1984); *Haynes v. Miller,* 669 F.2d 1125, 1126–27 (6th Cir.1982). *See generally Sweeney,* 439 U.S. at 24, 99 S.Ct. at 295.

■ Once defendant articulates the nondiscriminatory reasons, the *Burdine* presumption of discrimination flowing from the prima facie case automatically drops out of the case. *Weems v. Ball Metal & Chemical Division, Inc.,* 753 F.2d 527, 529 n. 2 (6th Cir.1985). Defendant need not persuade the court it was actually so motivated, but need merely raise a genuine issue of fact as to whether it in fact intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Sweeney,* 439 U.S. at 25, 99 S.Ct. at 295; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *West v. Fred Wright Construction Co.,* 756 F.2d 31, 33–34 (6th Cir. 1985); *Burnett v. Chickasaw Area Development Comm.,* 662 F.2d 1210 (6th Cir. 1981).

The nondiscriminatory reasons articulated by the Center for hiring Ms. Hill instead of Wrenn were the following:

First, Ms. Hill received glowing recommendations from former director Borders and from her former employer, Hough-Norwood; second, hiring Ms. Hill would greatly boost lagging employee morale, as evidenced by the employees' petition which demanded that she be hired; third, hiring Ms. Hill would provide continuity at a minimum cost in that Ms. Hill was already performing the work without an assistant and would not require the training a replacement would need; fourth, Ms. Hill was actively involved in renovating the Center's facilities; and fifth, hiring Ms. Hill was financially beneficial to the Center in that she had begun a plan which would bring the Center's "indicators" into the compliance with federal regulations needed to retain its funding, and she had extensive and positive relations with the federal and state officials responsible for the Center's funding.

Because the ultimate burden of persuasion rested with Wrenn, once the Center came forward with legitimate nondiscriminatory reasons for hiring Ms. Hill, Wrenn had to demonstrate by a preponderance of the evidence that the Center's reasons for hiring Ms. Hill were pretextual. *Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Jackson v. Pepsi-Cola,* 783 F.2d 50 (6th Cir.1986), *appeal pending; Fields v. Bolger,* 723 F.2d 1216, 1219 (6th Cir.1984); *Canham v. Oberlin College,* 666 F.2d 1057, 1061 (6th Cir.1981), *cert. denied,* 456 U.S. 977, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982). The district court found that Wrenn did not prove that the Center's reasons for hiring Hill were a mere pretext. Wrenn claims, however, that the manifest weight of the evidence established that Hill was hired as a mere pretext to avoid hiring him and that he was the only qualified candidate for the position.

It may be worthwhile to note here that Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates, *United Steelworkers of America v. Weber*, 443 U.S. 193, 207, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979). So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates, *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096; *Canham*, 666 F.2d at 1061; *Leiberman v. Gant*, 630 F.2d 60, 67 (2d Cir.1980). An employer has even greater flexibility in choosing a management-level employee, as is the case here, because of the nature of such a position. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982). *See also Manson v. Continental Illinois National Bank*, 704 F.2d 361 (7th Cir.1983); *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979); *Frausto v. Legal Aid Society of San Diego, Inc.*, 563 F.2d 1324 (9th Cir.1977).

But Wrenn claims that he was not rejected from a pool of qualified candidates. Rather, he argues he was the *only* qualified candidate.

The Center's search committee, the Ohio Civil Rights Commission, the employees of the Center, former director Borders, Hough-Norwood, and the district court all considered Ms. Hill qualified. Yet, Wrenn claims that on the strength of the advertisement which listed two "required qualifications," he was the only qualified applicant. There are several problems with this contention.

First, the search committee was free to decide what qualifications were necessary for the job—no regulations, articles of incorporation, or bylaws tied their hands. The search committee preferred an applicant with a master's degree and five years' experience; but those were not "requirements." The search committee decided the Center needed an individual who could take over management without any disruption of several key ongoing activities. They wanted someone with extensive, posi-tive working relations with government officials. They needed someone who could save them money and preserve their funding, and they needed someone who could improve employee morale. The search committee determined that Hill had all of these qualifications and was therefore qualified for the job.

Second, Wrenn had been informed, even before disclosing that he had previously sued the state, that a master's degree was preferred, but not required. Wrenn contends that the job description, wherein he was advised that a master's degree was merely preferred, is irrelevant because "the ad is the public quote contract with the applicant as opposed to the job description."[5] In a Title VII case, however, we look to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position. Wrenn knew from the start that *the search committee* considered a master's degree to be preferred and not required. In a Title VII claim, it is the employer's motivation and intent, not its business judgment, that is at issue. *Loeb*, 600 F.2d 1003. Wrenn must show that in not hiring him, the Center was motivated by retaliation and that the Center's reasons for hiring Ms. Hill were a pretext, not just bad judgment. *Furnco*, 438 U.S. 567, 98 S.Ct. at 2943; *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251 (6th Cir.1981). Wrenn's perception of his competence, and the incompetence of those competing against him, is irrelevant; the search committee's perceptions and motivations are key. *Smith v. Flax*, 618 F.2d 1062 (4th Cir.1980); *Cohen*, 686 F.2d at 798. The search committee preferred the master's degree but did not require it. Wrenn points to no evidence that the search committee was motivated by discriminatory animus.

Third, not even Wrenn fully met the advertised "required" qualifications. He did not have "5 years' progressive management experience." Therefore, even were we to accept that these were required as

---

5. What Wrenn means by this is unclear.

opposed to preferred qualifications, Wrenn cannot claim to have been the only qualified applicant, as he, too, was unqualified.

Finally, Wrenn argues that the fact that Ms. Hill was dismissed from the executive director position because she had misrepresented her educational qualifications proves that the Center's reasons for hiring her were pretextual. Ms. Hill had claimed on her resume that she had received a bachelor's degree. Shortly after the Center hired her, the Center received an anonymous letter stating that she was unqualified for the job. The Center investigated this charge and discovered that Ms. Hill had never received a bachelor's degree. She was thereupon dismissed.

■ Wrenn states that it is incredible that the Center would not have checked Ms. Hill's credentials before hiring her. But the Center's failure to check Ms. Hill's credentials occurred long before Wrenn had ever disclosed that he was suing the state for discrimination. She had been in defendant's employ long before Wrenn interviewed with the Center for the executive director position. The Center could not have refrained from checking Ms. Hill's credentials in retaliation against Wrenn, because their inaction occurred before they knew of his prior civil rights claim. *See Cohen*, 686 F.2d at 797. *See also Weems*, 753 F.2d 527.

Furthermore, the poor business judgment of the Center in failing to check Ms. Hill's credentials is an issue only if discriminatory motive can be inferred therefrom, *see Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096; *Furnco*, 438 U.S. 567, 98 S.Ct. at 2943; *Aikens*, 460 U.S. 711, 103 S.Ct. 1478. Recently, in *Goostree v. Tennessee*, 796 F.2d 854 (6th Cir.1986), we reiterated that discrimination, not some other factor, must be the basis for claimed preferential hiring. Wrenn may have shown the Center guilty of poor business judgment for relying on Ms. Hill's resume rather than checking her credentials; however,

"We, of course, defer to the district court with respect to matters of credibility and sustain the district court's findings if we find such plausible ... we cannot say that the district court clearly erred in finding that the defendants did not act with a statutorily prohibited animus in rejecting [plaintiff] for the job."

*Id.* Wrenn has made no showing of this "statutorily prohibited animus" on the Center's part, and the district court found none. The district court's findings are not clearly erroneous.

■ The district court committed no clear error in holding that Wrenn failed to prove to a preponderance that the Center's reasons for hiring Ms. Hill were pretextual. Therefore, we affirm the district court in granting judgment to defendant on plaintiff's Title VII claim.

## VI.

### *The Cross-Appeal for Attorney Fees*

Defendants appeal the district court's denial of attorney fees and, in addition, move this court to award attorney fees incurred on appeal.

### A.

Defendants charge that the district court abused its discretion in failing to award them attorney fees because Wrenn's claims were vexatious, frivolous and without foundation. In support of the claim that the suit was vexatious, they point out that Wrenn sued for unlawful age discrimination before ever checking whether Ms. Hill was younger than he. They also attack Wrenn's failure to withdraw his § 1981 action until the eve of trial, despite having known for several months that Ms. Hill, too, was black. Wrenn also filed the Title VI action despite the fact that, indisputably, he had no basis for that claim. Lastly, defendants cite the huge number of lawsuits and administrative actions charging discrimination that Wrenn has filed as evidence that they should be awarded attorney fees.[6] Concededly, the temptation

---

6. Defendants claim Wrenn has filed a civil rights action against nearly every employer to

is very great to attempt to put an end to Wrenn's abuse of the resources of the judiciary by awarding substantial attorney fees to the defendants.

■■■■■ However, since the award of attorney fees for trial work is within the sound discretion of the district court, *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978), we may not reverse that decision without finding that the district court abused its discretion. Because Wrenn did make out a prima facie case and was well qualified for the position as advertized, and the defendants acknowledged that the person they hired was unqualified, we cannot say that the district court abused its discretion in refusing to award attorney fees. We therefore affirm that decision.

### B.

■■■■ Next, defendants ask us to award attorney fees incurred on this appeal. Although attorney fees should rarely be awarded to defendants in discrimination cases, *Smith v. Smythe-Cramer Co.,* 754 F.2d 180 (6th Cir.1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Tarter v. Raybuck,* 742 F.2d 977 (6th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985); *Clark v. Universal Builders,* 706 F.2d 204 (7th Cir.1983); *White v. South Park Independent School District,* 693 F.2d 1163 (5th Cir.1982); *Montgomery v. Yellow Freight System, Inc.,* 671 F.2d 412 (10th Cir.1982); *Hughes v. Repco,* 578 F.2d 483 (3d Cir.1978), this court has the authority to award defendants their attorney fees incurred on appeal, 28 U.S.C. § 1912; Fed. R.App.P. 38; *Reynolds v. Humko Products,* 756 F.2d 469 (6th Cir.1985); *Martin v. Commissioner of Internal Revenue,* 756

F.2d 38 (6th Cir.1985), if we find that the appeal was frivolous, unreasonable or without foundation, *Christiansburg,* 434 U.S. 421, 98 S.Ct. 700.

In both *Reynolds,* 756 F.2d 469, and *Martin,* 756 F.2d 38, this court awarded defendants attorney fees because the plaintiffs could point to no evidence in the record to support their claims on appeal. Further, in *Campbell v. Cook,* 706 F.2d 1084 (10th Cir.1983), and *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287 (5th Cir.1983), *fee award vacated* (1984), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984), because both defendants and the courts had been forced by plaintiffs to waste valuable time on a wholly spurious claim, those courts awarded attorney fees.[7]

Defendants claim that because Wrenn frivolously appealed his own voluntary dismissals of his Title VI claims and his claims against Gould, they should be awarded their attorney fees. Further, they argue, because Wrenn could point to no basis for overturning the district court's judgment on the Title VII claims, this appeal is wholly vexatious and frivolous, and an award of attorney fees is therefore warranted. They also point to Wrenn's history of routinely suing, on discrimination grounds, anyone taking a position adverse to his interest—including the lawyers representing employers. Defendants emphasize that Wrenn frequently sues not-for-profit providers of health care for the poor.

■■■■ Although this court is deeply concerned about the waste of judicial resources and the lack of regard and respect for the law Wrenn has demonstrated in this case by filing unfounded age and race discrimination claims, by appealing his own voluntary dismissals, and by misstating the very clear state of the law regarding the Title VII burden of persuasion, we are un-

---

whom he has applied for a job since 1980. They point out that Wrenn has also filed these retaliation suits against the attorneys representing those employers. He has also sued the government for not enforcing the Civil Rights Act on his behalf.

7. Because Wrenn appealed judgments entered on his voluntary dismissals of two of his claims, Fed.R.Civ.P. 41(d), which provides for a defendant's *costs* incurred due to a plaintiff's attempts to litigate a dismissed cause of action, arguably applies. But defendants did not address this question.

able to say that plaintiff's appeal, on this particular record, is wholly frivolous, unreasonable or unfounded.

Wrenn's litigiousness is alarming. He is creating a small, very specialized library of cases on civil rights litigation all by himself. In this very case, two of Wrenn's earlier cases have been cited for the legal propositions there involved. What is more disturbing is that his multiplicitous filings waste judicial resources and the resources of the other parties involved. Wrenn's abuse of the civil rights laws to manufacture litigation is most distressing. His numerous unfounded civil rights challenges bring the noble purposes of the Civil Rights Acts into disrepute, turning attention away from the need to alleviate, and eventually eradicate, prejudice and discrimination, and focusing attention instead upon unwarranted costs and injustices that are suffered by defendants who must mount and fund a defense to groundless civil rights claims. This case forcefully suggests that it was filed as one of an increasing number of strike suits intended not to vindicate any honestly perceived civil rights violation, but to force the payment of settlement proceeds.

Also troubling is Wrenn's penchant for filing discrimination claims against not-for-profit providers of health care services for the poor. Because of Wrenn's disturbing pattern of filing repeated administrative claims and follow-up lawsuits against such health care providers, taxpayer dollars, intended to assist the poor, are diverted instead to the payment of attorney fees and related costs to defend against the dozens of suits and appeals Wrenn regularly files.

But, despite those compelling considerations and contrary to defendants' urging, this court cannot find *this particular appeal* frivolous, unreasonable or unfounded simply because Wrenn is overly litigious. *Cf. East v. Romine, Inc.*, 518 F.2d 332 (5th Cir.1975). Like the person who cried "Wolf," Wrenn may one day have a legitimate complaint. Therefore, each case must be weighed on its own grounds.

Wrenn did not appeal the district court's judgment frivolously. Whether he truly believes the Center discriminated against him, his appeal, on the record before us, is neither unreasonable nor unfounded. To find the appeal unreasonable, we must conclude that no reasonable person would have thought he could succeed on appeal; to find the appeal unfounded, we must conclude that the appeal had no foundation in law upon which the appeal could be brought. We are unable to say that; and we cannot use hindsight in making these determinations:

> "To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."

*Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701.

Although the question is very close, in light of the evidence that Wrenn was highly qualified for the position in question and Ms. Hill was later dismissed because she was unqualified, and because Wrenn did make out his prima facie case, we are unable to conclude that this *pro se* appeal was entirely frivolous, unreasonable or without foundation.

■ That having been said, the appellant might be well-advised, however, to think twice before filing another lawsuit of this character. A litigant's prior record in the courts is not irrelevant in determining questions of good faith in the prosecution of lawsuits and appeals, and if this appellant's past is prologue, he is likely to find that future resort to the dispute-resolving mechanisms normally provided by the taxpayers at virtually no cost to the litigants may cost him a good deal more than he has been accustomed to paying. See Marti-

**506**

neau, *Frivolous Appeals: the Uncertain Federal Response*, 1984 Duke L.J. 845, 853–54, where a number of "prior litigation" cases are marshalled.

The judgment of the district court is affirmed and the claim for attorney fees on appeal is denied.