37 F.3d 1498
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Dr. Godwin U. EKECHUKU, Plaintiff-Appellant,
v.
ALCOHOL, DRUG ADDICTION & MENTAL HEALTH SERVICES BOARD;
Gary M. Schaeufele; and Paul Vanderschie,
Defendants-Appellees.
 No. 93-3910.
 United States Court of Appeals, Sixth Circuit.
 Oct. 6, 1994.
 
 Before: KENNEDY, WELLFORD and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Dr. Godwin U. Ekechuku appeals the order of the District Court granting summary judgment in favor of the Alcohol, Drug & Mental Health Services Board, Gary M. Schaeufele, and Paul VanderSchie (collectively "the Board") in this discrimination action. On appeal, plaintiff, who is black and was born in Nigeria, contends that the Board did not hire him because of his race in violation of 42 U.S.C. Secs. 1981, 1983. Plaintiff argues that the District Court erred in ruling that, as a matter of law, plaintiff could not prove that defendant's proffered reason for not hiring him was a pretext. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Plaintiff was one of 21 applicants for the position of Planning and Evaluation Associate at the Alcohol, Drug & Mental Health Services Board, a public agency in Summit County, Ohio. After reviewing the credentials of the candidates, the Board invited six candidates, including plaintiff, for an interview. During plaintiff's deposition, he testified that at this initial interview, Gary Schaeufele, supervisor of Planning and Evaluation for the Board, told plaintiff,
 
 
 3
 about the problem there, that, um, [there were] probably some people with the organization that might reject me because of my race, and--something like that, and asked me if I have--how I could work with whites.
 
 
 4
 And it was then I told him that I'm married to a white, and that I have far greater contact with whites than I have with--with blacks.
 
 
 5
 And in the first place, I went to Wisconsin, I lived in a white family all the while I was there, and I told him I wouldn't have any problem at all.
 
 
 6
 Joint App. at 293. Plaintiff testified that at his second interview, Paul VanderSchie, executive director of the Board who had lived in Nigeria, discussed plaintiff's tribal ancestry, the Ibo, and how they were marked for extinction by the Hausa tribe. VanderSchie noted that the Ibos "are hard working people, and that it was the envy of the rest of the tribal groups." Joint App. at 302. He also noted that a number of famous athletes were members of that tribe and that Ibos were agressive. He spent little time discussing plaintiff's suitability for the job and left before the interview was over.
 
 
 7
 After the second round of interviews, plaintiff was among the two top-ranked candidates for the position. Both plaintiff and Dr. Jeffrey Kleist, the other top-ranked candidate who was subsequently hired, had attended graduate school at the University of Akron. Kleist had just received a Ph.D. in Sociology with an emphasis in Mental Health Care Systems, and plaintiff was to receive a Ph.D. in Sociology in a few months. Both plaintiff and Kleist listed Dr. Mark Tausig, a sociology professor at the university, as a reference. When defendant contacted Dr. Tausig, he stated that plaintiff was unfamiliar with mental health systems and did not possess the skills to communicate effectively with the Board's other employees. When asked about Kleist, Dr. Tausig stated that he was quite familiar with mental health systems, had sound methodological skills, and communicated effectively with others. Dr. Rudy Fenwick, another of plaintiff's references, stated that plaintiff had statistical skills, but had not studied nor expressed an interest in mental health systems. Plaintiff concedes that Kleist received more favorable references.
 
 
 8
 After Kleist was hired, plaintiff brought this action contending that defendant did not hire him because of his race in violation of 42 U.S.C. Secs. 1981, 1983. Defendant responded that plaintiff was not hired because his references were inferior to Kleist's. Defendant denied that any racist remarks were made at plaintiff's first interview. Defendant conceded, however, that VanderSchie spoke to plaintiff about his Ibo ancestry, but claimed that this discussion was motivated not by racism, but by the fact that VanderSchie had spent 12 years living in Nigeria. The District Court granted defendant's motion for summary judgment, finding that plaintiff had no evidence that defendant's proffered reason for not hiring him was pretextual.
 
 II.
 
 9
 This Court reviews a district court's grant of summary judgment de novo, and makes all inferences in favor of the non-moving party. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 III.
 
 10
 Claims for discrimination in violation of 42 U.S.C. Secs. 1981, 1983 are governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992); Goostree v. State of Tennessee, 796 F.2d 854, 863 (6th Cir.1986), cert. denied, 480 U.S. 918 (1987). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Once a prima facie case is established, the burden shifts to the defendant to articulate a nondiscriminatory reason for its action. Id. If the employer meets this burden of production, the plaintiff's prima facia case is rebutted, and the plaintiff must prove by a preponderance of the evidence that the reasons offered by the employer were not real, but rather served as a pretext for discrimination. Id. The "ultimate burden of proving that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times." See Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987) (citing Burdine, 450 U.S. at 253).
 
 
 11
 Plaintiff argues that the District Court improperly weighed the evidence, and that a reasonable trier of fact could find that defendant's explanation for not hiring him was pretextual for two reasons. First, plaintiff argues that because he told defendant that he was experienced in mental health systems, defendant knew that the references were inaccurate but relied upon them anyway to mask racial discrimination. Plaintiff, however, has presented no evidence that defendant knew the references were inaccurate or unreasonably relied upon them as a pretext for discrimination. Indeed, the references were supplied by plaintiff. The fact that the references' opinions of plaintiff's abilities were not as generous as his own assessment does not show that defendant's reliance on the references was pretextual--the very reason that employers contact references is to verify and supplement information provided by a job applicant.
 
 
 12
 Second, plaintiff argues that the fact that he was asked during interviews about his ability to get along with white people and about his Ibo ancestry indicates that race was a factor in the hiring process and rebuts defendant's explanation for not hiring plaintiff. After these interviews, however, plaintiff was one of the two top-ranked candidates until his references were received. These remarks are insufficient to prove pretext either directly by demonstrating "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256.
 
 IV.
 
 13
 Accordingly, the decision of the District Court is AFFIRMED.