**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0271n.06
Filed: April 19, 2006

**No. 05-1162**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MICHAEL YOUNG, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| OAKLAND COUNTY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

BEFORE: NELSON, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

PER CURIAM.

In this action alleging employment discrimination on account of race in violation of 42 U.S.C. § 2000e-2(a) ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS ANN. § 37.2202 (2001), plaintiff Michael Young claims that defendant Oakland County, Michigan, discriminated against him on the basis of race by failing to interview and hire him for the position of Chief Community Corrections Field Operations Manager. The district court granted defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). We affirm.

I.

The following factual background is taken from the district court's concise and thorough

recitation of the facts as set forth in its opinion and order granting defendant's motion for summary

judgment:

Defendant uses an equal employment opportunity policy, an affirmative action policy, and a system of merit rules for filling vacancies in county positions. Following these policies, Defendant announced an opening for the position of Chief Community Corrections Field Operations on January 14, 2002. Although experience with the criminal justice system was not listed as a requirement for obtaining the job, the description quite clearly indicated that, as alluded to by the position's title, a great portion of the job dealt with the criminal justice system. The description was as follows:

> Under limited direction, is responsible for supervising Pretrial Service unit employees and support staff. Reviews reports concerning the status of inmates housed in the Oakland County Jail. Assists the court in the more complex bonding considerations and other alternatives. Prepares and presents regular reports based on program statistics to appropriate officials. Monitors the Pretrial Services program budget. Responds to and initiates correspondence to a variety of individuals within the criminal justice system. Participates in developing, implementing, and updating policies and procedures for the consistent operation of Pretrial Services including the customized database Pretrial on Line [sic]. Assists with establishing long range goals and strategies for the division. Assists the manager in the development of the division budget and in the presentation to the Board of Commissioners and related committees. Assists the manager in the development of the state grant application. Functions as a liaison concerning the Pretrial Services Program to various committees and agencies.

Def. Mot., Ex. 3. As the job description indicates, the position of Chief Community Corrections Field Operations requires more than mere interaction with the criminal justice system, or even the managing of criminal justice employees. The position is responsible for the formation of policies and procedures and the actual development of the Pretrial Services. Whoever is hired must serve as Pretrial Service's liaison to other agencies, be responsible for inmates in the Oakland County Jail, and assist the

Oakland County Court with complex bond issues. Needless to say, criminal justice experience would be a significant asset in such a position.

The position's minimum qualifications, however, were a master's degree in public or business administration, criminal justice, social work, sociology, psychology, or related areas; and at least four years full-time case work or related work experience involving interviewing, investigating and counseling practices, procedure and techniques, and a valid driver's license. *Id.* Experience in the criminal justice field, then, was not listed as a requirement as such.

Plaintiff, who has a master's degree in business administration and twenty-one years of employment at General Motors Corporation, applied for the position on March 1, 2002. Initially, Plaintiff was rejected because he did not meet the minimum qualifications. In response to this rejection, Plaintiff hand delivered a letter which he characterized as a formal appeal. Defendant replied in writing that Plaintiff's application was rejected because he appeared to lack the required caseload and counseling experience. The letter explained that Plaintiff's application would nevertheless be accepted, because Defendant would consider information Plaintiff had submitted in a prior application. Plaintiff has applied for numerous positions with Defendant, but has only obtained one interview to date.

Defendant then asked Plaintiff to complete the next step in the process, which was a training and experience questionnaire. The questionnaire consisted of four questions. Based on the completed questionnaire, Plaintiff was informed on March 28, 2002, that he had passed the Chief Community Corrections Field Operations examination with a final score of 100 and his "rank on the eligible list [was] 'Top Five.'" Pl. Resp., Ex. G. According to Defendant, anyone who answered yes to all four questions received a score of 100 and was placed on the "Top Five" list. In fact, there were twenty-nine candidates who scored 100 on the exam and were placed in what Defendant calls the "Top Five" eligible list.

According to Defendant, the names on the "Top Five" list are not ranked and are listed in random order, and the fact that Plaintiff's name appeared second on the list had no meaning. Of the twenty-nine "Top Five" candidates, there were nine Caucasian females, nine Caucasian males, six African American females, four African American males, and one male of unidentified race. Six persons were interviewed for the position. All six interviews were conducted on March 25, 2002. The interviews were conducted before Plaintiff finished proving his eligibility. Plaintiff first appeared on the eligible list when it was in its fourth revision, which

revision was sent out on April 3, 2002. Defendant's merit rules allow for the best candidate to be hired at any time during the interview and hiring process.

Of the six interviewed, three were African American females, two were Caucasian males, and one was a Caucasian female. Three of the six had no direct criminal justice experience. Ultimately, one of the six, a Caucasian male, Robert Gatt, was hired. Mr. Gatt's application materials demonstrated that he possessed extensive experience in the criminal justice system, whereas Plaintiff's application materials demonstrated that he possessed no experience in the field. Defendant maintains that it has an obligation to hire the best candidate for the job regardless of race or any other factor.

Defendant believes that the "Top Five" misnomer is what caused Plaintiff to believe that he was passed over for the position on account of his race. Plaintiff, himself, sees no reason other than race why he could be placed in the top five yet not receive an interview when Defendant interviewed six candidates. Plaintiff points out that the Affirmative Action report prepared by the county for both 2001 and 2002 indicates that the classification and department for which Plaintiff applied had not met the goal for utilizing minorities. However, Defendant's obligations under its affirmative action policy are not requirements, but goals. Furthermore, the information on race supplied by the candidates is used for statistical purposes only, and those making the hiring decision are not informed of a candidate's race prior to the interview, though they do know generally that minorities have applied.

II.

Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission ("EEOC") and defendant was duly notified of a forthcoming investigation. Nevertheless, the EEOC district director subsequently advised defendant that the investigation was being terminated because plaintiff had requested a "notice of right to sue."

On June 12, 2003, plaintiff filed the present action in district court, alleging race discrimination in violation of Title VII and Michigan's ELCRA arising out of his attempts to gain employment with defendant and its failure to hire him. Following the close of discovery, defendant

moved for summary judgment. The district court granted defendant's motion and dismissed plaintiff's case with prejudice, ruling that plaintiff failed to present any evidence of direct discrimination and, also, failed to carry the prima facie burden required of the alternative method of demonstrating discrimination by the presentation of circumstantial evidence. Specifically, the district court held that, in light of his extensive criminal justice background, Gatt was better qualified for the vacant position than plaintiff, who had no such experience; thus, plaintiff was unable to make the requisite showing that he was similarly situated in all relevant aspects of his employment circumstances with Gatt. The district court further concluded that even if plaintiff satisfied his prima facie burden, defendant articulated a legitimate, nondiscriminatory reason for hiring Gatt, namely, his superior qualifications, and plaintiff failed to demonstrate that this reason was pretextual. Plaintiff now timely appeals from the judgment entered in favor of defendant.

III.

This Court reviews a district court's grant of summary judgment de novo. *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Detroit Water Team Joint Venture v. Agric. Ins. Co.*, 371 F.3d 336, 338 (6th Cir. 2004). "[O]nce the movant of a summary judgment motion satisfies its burden by

demonstrating the absence of a genuine issue of material fact, the nonmoving party must produce

specific facts demonstrating a genuine issue of fact for trial if it is to withstand summary judgment."

*Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 832 (6th Cir. 2005) (internal quotation

omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to

a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id*. "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at

252; *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

IV.

In *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003), this Court

reiterated the well-established standard of proof required in Title VII cases:

> To avoid a grant of summary judgment on a Title VII claim, a plaintiff must either
> provide direct evidence of discrimination or establish a prima facie case, which
> creates an inference of discrimination based on circumstantial evidence. *Talley v.
> Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995) (citations omitted). A
> prima facie case requires a plaintiff to show (1) that he is a member of a protected
> class; (2) that he applied for, and did not receive, a job; (3) that he was qualified for
> the job; and (4) that a similarly-situated person who was not in the plaintiff's
> protected class received the job. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160,
> 1166 (6th Cir. 1996); *see also Tex. Dep't of Comty Affairs v. Burdine*, 450 U.S. 248,
> 253-54 & n.6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas
> Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).
>
> Once the plaintiff establishes a prima facie case, the burden shifts to the defendant
> to offer a legitimate, nondiscriminatory reason for the adverse employment action

at issue. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant satisfies that burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (internal citation and quotation marks omitted)).

The same test is applied to claims of unlawful race discrimination under Michigan's ELCRA. *Sutherland v. Mich. Dept. of Treasury,* 344 F.3d 603, 614 n.4 (6th Cir. 2003); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001).

Here, there is a dearth of direct evidence showing discrimination. With regard to a case based on circumstantial evidence, the parties do not dispute that plaintiff has satisfied the first two elements of a prima facie claim pursuant to the *McDonnell Douglas* framework: (1) he is a member of a protected class, and (2) he applied for, and did not receive, a job. Despite defendant's argument to the contrary, the district court found that plaintiff had established the third prima facie element, i.e., that he was qualified for the position, but concluded that plaintiff failed to adequately demonstrate the fourth, similarly-situated prong of a prima facie case, opining in pertinent part:

> Although Plaintiff met the minimum qualifications for the position, so did twenty-three other candidates who had made it on to the final eligibility list. Consequently, Defendant asserts that it was allowed to form additional qualifications and review the application materials for those additional qualifications. Barbara Hankey, who performed the interviews and the final hiring decision, and was promoted from the position herself, made it her goal to fill the position with someone who had criminal justice experience.

Whether or not creating additional requirements is an acceptable procedure, the Court concludes that while Plaintiff has established that he was initially qualified for the job, he has not established that he was similarly situated with Mr. Gatt, the person whom Defendant decided to hire. It is obvious that the position of Chief Community Corrections Field Operations Manager entails working within the criminal justice system. A candidate with criminal justice experience is simply more qualified than a candidate with no such experience, and the two are not similarly situated.

Plaintiff's contention that Defendant could not know whether Mr. Gatt was more qualified than Plaintiff without interviewing Plaintiff lacks merit. The application procedures prior to the interview stage provided ample opportunity to discover the type of work experience possessed by each candidate. Plaintiff lacked any criminal justice experience and, given the position's job description, no reasonable jury could conclude that Plaintiff was similarly situated with Mr. Gatt when it came to selecting the most qualified candidate for the position of the <u>Chief</u> of Community Corrections Field Operations. Thus, Plaintiff has not made out a <u>prima</u> <u>facie</u> case of discrimination.

We agree. In *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), we explained that in order to be considered "similarly situated" for purposes of creating an inference of disparate treatment, a plaintiff must "prove that all of the *relevant* aspects of his employment situation are 'nearly identical' to those of the [non-minority] employee[] who he alleges [was] treated more favorably" (emphasis added). "Courts . . . should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected [successful applicant]." *Ercegovich v. Goodyear Rubber & Tire Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Here, where the value of a criminal justice background in relation to the position at issue is self-evident, the district court properly determined that plaintiff was not similarly situated to Gatt, whose employment application indicated that he not only met the general criteria for the position,

but also was a police sergeant with twenty-seven years of experience on the police force. Plaintiff

had no such experience. The factor of criminal justice experience, while not mentioned in the job

announcement as a specific requirement for the job, is certainly a "relevant" consideration in the

discretionary hiring process for the position of Chief Community Corrections Field Operations

officer. As we recently noted in *Browning v. Dept. of the Army*, 436 F.3d 692, 696-97 (6th Cir.

2006):

> [T]his court has held that employers are *not* rigidly bound by the language in a job
> description. *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987). As explained in *Wrenn*,
> employment-discrimination laws do "not diminish lawful traditional management
> prerogatives in choosing among qualified candidates," and an employer has "great
> [ ] flexibility in choosing a management-level employee." *Id*. at 502 (holding that
> an employer can consider factors external to a job description when selecting among
> qualified candidates (citation and quotation marks omitted). The *Wrenn* court further
> held that "the employer's motivation, not the applicant's perceptions, or even an
> objective assessment [ ] of what qualifications are required for a particular position,"
> is key to the discrimination inquiry. *Id*. at 502. *See also Aka v. Washington Hospital
> Center*, 156 F.3d 1284, 1297 n.15 (D.C. Cir. 1998), where the D.C. Circuit observed
> that[:]
>
> "reasonable employers do not ordinarily limit their evaluation of applicants to a
> mechanistic checkoff of qualifications required by the written job descriptions.
> Obviously, they will take additional credentials into account, if those credentials
> would prove useful in performing the job."

Here, defendant followed all requirements of the merit system rules and affirmative action

and equal employment opportunity policies in the hiring process for the Chief of Community

Corrections Field Operations position. Plaintiff has presented no evidence that defendant improperly

judged the qualifications of the candidates or made the hiring selection with underlying illegal

motivations. Although plaintiff alleges Title VII and ELCRA mandated that he be afforded an

interview, there simply is no such requirement. The department head, Ms. Hankey, acted within "lawful traditional management prerogatives in choosing among qualified candidates." *Wrenn*, 808 F.2d at 502. In doing so, she winnowed down the application pool to the most qualified candidates and interviewed six applicants, three of whom were minorities. She unequivocally testified that she chose not to interview plaintiff in light of his complete lack of criminal justice experience. Conversely, Gatt's extensive criminal justice background tipped the scales heavily in his favor.

It is readily apparent from the record that Gatt was better qualified for the position than plaintiff. "So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates." *Id.* at 502. *See*, *e.g., Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402-03 (6th Cir. 2001) (unpublished) (concluding that because the plaintiff was less qualified in all relevant respects for the vacant position than the successful applicant, he failed to demonstrate that he was similarly situated and thus did not make out a prima facie Title VII case), *cert. den.* 536 U.S. 922 (2002); *cf.*, *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 243-44 (6th Cir. 2005), and *Leadbetter v. Gilley*, 385 F.3d 683, 691-92 (6th Cir. 2004) (both concluding in context of failure to promote discrimination claims that because the successful candidates had superior experience and qualifications regarding material and relevant aspects of vacant job openings, plaintiffs were not similarly situated to successful candidates as required to meet the fourth prong of the prima facie burden). Under the present circumstances, summary judgment was appropriately granted to defendant.

V.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendant.

**DAVID A. NELSON**, Circuit Judge, concurring in judgment. It seems to me that the plaintiff probably carried his not-very-arduous burden of establishing a prima facie case. Three of the six people selected for job interviews had never worked in the criminal justice system, and that fact, coupled with the failure of the county to list criminal justice experience as a requirement for the job, suggests to me that the county itself assumed that a qualified applicant without criminal justice experience could be comparable to a qualified applicant with such experience. The county articulated a legitimate reason for its final selection, however, and I agree with the district court that the stated reason was not shown to have been a pretext for race discrimination. This conclusion is consistent with our recent decision in *Browning v. Dept. of the Army*, 436 F.3d 692 (6th Cir. 2006), a case that was resolved at the final stage of the burden-shifting analysis. I would affirm the judgment in the present case on the same basis.