EQUAL EMPLOYMENT OPPORTUNITY COMM'N, Plaintiff,

v.

OUTBACK STEAKHOUSE OF FLORIDA, INC., et al., Defendants.

No. 5:99 CV 91224.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 15, 1999.

Lawrence Mays, C. Larry Watson, Donna L. Williams–Alexander, Cleveland Dist. Off., Equal Employment Opportunity Commission, Cleveland, OH, for Equal Employment Opportunity Commission, plaintiff.

Robert C. Petrulis, Karen B. Newborn, Baker & Hostetler, Cleveland, OH, for Outback Steakhouse of Florida, Inc., defendants.

## ORDER

DOWD, District Judge.

This matter before the Court on Defendants' Motion to Dismiss and Memorandum in Support thereof (Doc. Nos. 8 & 9), Plaintiff's Response (Doc. No. 11) and Defendants' Reply (Doc. No. 12).

### I.

The Equal Employment Opportunity Commission ("EEOC") filed this lawsuit in May of 1999 alleging that a counterclaim filed by defendants Outback Steakhouse of Florida, Inc. and Outback/Cleveland Joint Venture (collectively, "Outback") in a prior case constituted unlawful retaliation under Title VII, 42 U.S.C. § 2000e–3. The counterclaim was filed against Julie Inman in *Fulton, et al. v. Outback Steakhouse of Florida, Inc., et al.,* a sexual harassment suit which was settled and dismissed in August of 1999. Ms. Inman is a former manager of Outback who now lives in Texas.

Outback has moved for dismissal on two grounds. First, Outback contends that one of the essential elements of a Title VII claim is that the individual has suffered an "adverse employment action." Outback argues that because the EEOC's Complaint fails to allege that the counterclaim had any effect on Ms. Inman's employment or prospective employment, it fails to show the existence of an adverse employment action as opposed to merely an adverse action. Second, defendants claim that there is no case or controversy under Article III of the Constitution since the Complaint fails to allege that any person suffered or is suffering any injury as a result of the counterclaim.

### II.

According to Outback, Title VII's anti-retaliation provision requires that any allegedly retaliatory action taken by an employer must be employment-related in order to be actionable under 42 U.S.C. § 2000e–3. Outback argues that because the EEOC failed to allege that Outback's counterclaim affected Ms. Inmans's employment status, it fails to state a claim under 42 U.S.C. § 2000e–3.

The first step in any interpretation of a statute is determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The inquiry must cease if the language is unambiguous and the statutory scheme is "coherent and consistent." *Id.* quoting *United States v. Ron Pair Enterprises, Inc.* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The anti-retaliation provision of Title VII states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. It is already established that

the term "employees" includes former employees such as Ms. Inman. *Robinson v. Shell Oil Co.* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). So the question is whether the kind of "discrimination" prohibited in 42 U.S.C. § 2000e–3 is limited only to discrimination affecting employment or whether it includes other kinds of discrimination that may be adverse to the employee or former employee.

This Court finds that the kind of discrimination prohibited by 42 U.S.C. § 2000e–3 is not limited only to employment-related discrimination. The reasoning for this is simple: nothing in the plain language of the statute admits of such a qualification, and there is nothing in the statute which the Court finds ambiguous. Title VII states that employers cannot discriminate against employees in retaliation for employees' participation in claims brought under the statute. In the case at hand, the Complaint alleges that Outback discriminated against Ms. Inman in filing a counterclaim against her, and that Outback had a retaliatory motive in doing so. "If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must be regarded as conclusive.'" *Russello v. United States* 464 U.S. 16, 20, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citations omitted). The EEOC's Complaint states a claim under the unambiguous language of 42 U.S.C. § 2000e–3.

This conclusion accords with both the specific and broad context of Title VII and it renders the statutory scheme "coherent and consistent." *Robinson v. Shell Oil Co.* 519 U.S. at 339–40, 117 S.Ct. 843; *Estate of Cowart v. Nicklos Drilling Co.* 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). The impetus behind Title VII's anti-retaliation provision is the need to prevent employers from deterring victims of discrimination from complaining to the EEOC. *Robinson v. Shell Oil* 519 U.S. at 346, 117 S.Ct. 843. It is certainly true that "a lawsuit ... may be used by an employer as a powerful instrument of coercion or retaliation" and that such suits can create a "chilling effect" on the pursuit of discrimination claims. *Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd.* 461 U.S. 731, 740–41, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Hence, this Court's conclusion "carr[ies] persuasive force given [its] coherence and [its] consistency with a primary purpose of anti-retaliation provisions: Maintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.* 519 U.S. at 346, 117 S.Ct. 843.

Moreover, the consistency of this ruling is bolstered by the fact that Title VII's substantive provisions limit actionable discrimination to that which is related to employment. Title's VII's substantive provision concerns discrimination "with respect to his compensation, terms, conditions, or privileges of employment ...." 42 U.S.C. § 2000e–2(a)(1). The anti-retaliation provision contains no such qualifiers, prohibiting only discrimination that takes place because an employee has "made a charge, testified, assisted, or participated" in actions under Title VII. The inclusion of qualifying language in Title VII's substantive provision, and its exclusion in the anti-retaliation provision, implies that a retaliatory act need not be employment-related in order to be actionable under Title VII.

A number of other courts have also found that "the filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for a claim under Title VII." *Harmar v. United Airlines, Inc.* 1996 WL 199734 (N.D.Ill.). In *EEOC v. Virginia Carolina Veneer Corp.* 495 F.Supp. 775, 778 (W.D.Va.1980), for instance, the court found that the filing of a state court defamation action was "unquestionably retaliatory" under Title VII. *See also Cozzi v. Pepsi–Cola General Bottlers, Inc.* 1997 WL 312048 (N.D.Ill.). In addition, courts have found retaliatory litigation under the Age Discrimination in Employment Act ("ADEA") and noted the similarity between the ADEA and Title VII. In *Passer v. American Chemical Society* 935 F.2d 322 (D.C.Cir.1991), although the conduct complained of was still em-

ployment-related, the court ruled that under the ADEA the employer need only have "engaged in conduct having an adverse impact on the plaintiff." *Id.* at 331. In *Blistein v. St. John's College,* a district court found that retaliatory action under the ADEA need not be employment-related and could include the filing of a counterclaim. 860 F.Supp. 256, 267–268 (D.Md.1994).

Admittedly, defendant's insistent argument that the Sixth Circuit only recognizes retaliation under Title VII when it is employment-related rests on seemingly solid ground:· the Sixth Circuit's test requires (1) that plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by defendant; (3) that, thereafter, the defendant took an *employment action adverse to the plaintiff;* (4) that there was a causal connection between the protected activity and the *adverse employment action. EEOC v. Avery Dennison Corp.* 104 F.3d 858, 860 (6th Cir.1997) (emphasis added). However, the Circuit has never specifically held that Title VII retaliation needs to be employment-related. Its test has always been applied in a factual context in which this particular issue did not arise. Put otherwise, the Sixth Circuit has never been confronted with the issue of whether Title VII retaliation must be employment-related.

This is important because in examining the genealogy of the Sixth Circuit's test, it becomes apparent that the phrase "adverse employment action" was not meant to exclude adverse retaliatory actions that are not employment-related. The Sixth Circuit's test was first articulated in *Wrenn v. Gould* 808 F.2d 493, 499 (6th Cir.1987). The *Wrenn* court imported the test almost verbatim from the Ninth Circuit case of *Cohen v. Fred Meyer, Inc.* 686 F.2d 793, 796 (1982), adding only the feature of numbered elements. 808 F.2d at 499. *Cohen,* in turn, paraphrased its language from two other Ninth Circuit cases, *Gunther v. County of Washington* 623 F.2d 1303, 1314 (1979) and *Miller v. Williams* 590 F.2d 317, 320 (1979).

When the courts in *Miller* and *Gunther* articulated the retaliation test, they stated that plaintiffs needed to be "subjected to adverse action by their employer." This implies that retaliatory acts under Title VII need not be employment-related. Yet when *Cohen* translated those two cases, the test turned from "adverse action by an employer" to "adverse employment action," implying that the retaliation must indeed be employment-related.

The etymological evolution that occurred in *Cohen* took place without regard to the issue presently under consideration. *Wrenn, Cohen, Gunther* and *Miller* all concentrated on the causation aspect of the test; none of them involved the issue of whether a Title VII retaliatory action has to be employment-related. The *Cohen* court blithely changed the wording of the test. The Sixth Circuit adopted that wording in *Wrenn* and has cited it ever since. Now, Outback claims that the language of the test restricts actionable retaliation to that which is employment-related. But since the Sixth Circuit has never applied its test in a factual setting in which the wording of the test mattered to the issue *sub judice,* this Court will not presume that the Sixth Circuit's test was meant to override what appears to be the plain and unambiguous meaning of 42 U.S.C. § 2000e–3.

Defendants also rely on a number of Sixth Circuit cases holding that the alleged retaliatory act must be a *material* change in the terms and conditions of employment, and that adverse actions that only minimally affect the terms and conditions of employment are not sufficient to constitute "adverse employment actions." *See e.g. Kocsis v. Multi–Care Management, Inc.* 97 F.3d 876, 885 (6th Cir.1996). Sixth Circuit cases finding no adverse employment action due to a merely marginal effect on the terms and conditions of employment include: *Yates v. Avco Corp.* 819 F.2d 630, 638 (1987) (job reassignments without salary or work hour changes do not ordinarily constitute adverse employ-

ment action); *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir.1999) (lowered performance ratings without reduced pay); *Thornton v. Denny's Inc.* No. 92–1368, 1993 WL 137078, 1993 U.S.App. Lexis 10260 at *9 (1993) (job transfer to different city without decrease in pay); *Parrish v. Ford Motor Co.* No. 89–6290, 1990 WL 109188, 1990 U.S.App. Lexis 13318 at *14–15 (1990) (poor evaluation without effect on employment status). Based on these cases, defendants argue that since the EEOC failed to allege that the counterclaim had any effect on employment status, its Complaint is facially insufficient to state a claim under 42 U.S.C. § 2000e–3.

*Kocsis* and the other cases discussed above do not pass on whether the retaliatory act needs to be employment-related under Title VII. Rather, they only go to whether the alleged retaliatory act was sufficiently adverse. In focusing on the adverseness of the action, these cases are grounded in the rationale of 42 U.S.C. § 2000e–3; employees who do not suffer "material" adverse action are not likely to be ·chilled in making complaints about discrimination or harassment. Since the Supreme Court has already found that lawsuits have a sufficiently adverse chilling effect on employees wishing to avail themselves of statutory protections, *Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd.* 461 U.S. at 740–41, 103 S.Ct. 2161, it is consistent with *Kocsis* etc. to find that a counterclaim that is not employment-related nevertheless constitutes retaliation under 42 U.S.C. § 2000e–3.

As Outback notes, however, a number of cases have decided, on the facts, that retaliator, action under Title VII is indeed limited to employment-related action. Most prominent among these cases is *Brower v. Runyon* 178 F.3d 1002 (8th Cir.1999); but this Court is reluctant to heed that case. In the short paragraph in which it finds that adverse actions have to be employment-related, the *Brower* court never considers the plain meaning of 42 U.S.C. § 2000e–3. *Id.* at 1007. The same is true of the other cases defendants cite. In *Murphy v. Village of Hoffman Estates* 959

F.Supp. 901 .(N.D.Ill.1997), the court concludes that the retaliation must bear some nexus to employment but does so without discussion and without citing 42 U.S.C. § 2000e–3. *Id.* at 907. In *Ginsberg v. Valhalla Anesthesia Associates,* 971 F.Supp. 144 (S.D.New York 1997), the court concludes that a counterclaim cannot be retaliation under Title VII unless it is employment-related; but it merely cites the language of the test as worded in *Cohen* and does not consider the language of 42 U.S.C. § 2000e–3. Nor does it offer a rationale for its finding. The same can be said of *Gustafson, Inc. v. Bunch* 1999 WL 304560 (N.D.Texas), another case on which defendants rely.

Outback also puts stock in *Glass v. IDS Financial Services* 778 F.Supp. 1029, 1062 n. 53 (D.Minn.1991). There, the court stated in dicta that "The anti-retaliation provisions of the ADEA and Title VII are designed principally to deal with retaliatory conduct that occurs outside the judicial system ... Once a lawsuit has been filed, courts have the tools to deal with counterclaims that are truly retaliatory or made in bad faith." Courts may indeed have the tools to deal with bad faith litigation; but that is essentially a policy consideration that is properly the subject of legislative cognition. It supplies no reason to disregard the language of a statute, if that language is plain and unambiguous. Hence, the better view is that Title VII retaliatory actions need not be employment-related.

### III.

■ Outback also argues that the EEOC lacks standing to bring its suit because it has not alleged that Ms. Inman suffered any injury in fact from the filing of the counterclaim. Outback notes that Ms. Inman and Outback have settled their private dispute and Outback has dismissed its counterclaim against her. The EEOC, for its part, argues that it has an "independent right to eradicate employment dis-

crimination on behalf of the public interest."

Outback relies almost exclusively on *EEOC v. Sears, Roebuck & Co.* 883 F.Supp. 211 (1995); but its reliance is misplaced. There, the court found that the EEOC lacked standing when it purported to sue on behalf employees who had retained their employment and thereby not suffered an injury in fact. That case is inapposite, however, because Ms. Inman has suffered an injury. Taking the Complaint at face value, Ms. Inman was sued in direct retaliation for her assertion of statutory rights. Hence, she was deprived of a statutory right to be free from retaliatory litigation.

This entitles the EEOC to proceed with its suit and vindicate the public interest. The fact that Ms. Inman may have settled her private dispute with Outback does not take the EEOC out of the picture. The EEOC "does not function simply as a vehicle for conducting litigation on behalf of private parties." *Occidental Life Ins. Co.* 432 U.S. 355, 368, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Hence, it may "provide relief which goes beyond the limited interests of the charging parties." *Blue Bell Boots, Inc. v. EEOC* 418 F.2d 355, 358 (6th Cir.1969); *See also EEOC v. Frank's Nursery & Crafts, Inc.* 177 F.3d 448 (1999).

## IV.

For the reasons set forth above, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.