OPINION
{¶ 1} Kimberly Edwards is appealing from the entry of summary judgment by the trial court in favor of the defendants, the City of Beavercreek, Dan Dubruiel as City Manager of Beavercreek, and Jon Stoops, as Finance Director for Beavercreek. This case has an extensive procedural history, with Edwards' first complaint filed against the defendants in March, 1999, including a failed appeal to this court and a subsequent amended complaint, all of which is unnecessary to recite here. The factual history and the issues before the trial court are succinctly summarized in the following relevant portions of its judgment entry:
 {¶ 2} "Factual History
 {¶ 3} "This Complaint arises out of Plaintiff Kimberly Edwards' employment at the City of Beavercreek. Ms. Edwards is a female who began working for the City in 1987. In 1989, she became one of two account clerks in the accounts payable area. In August 1998, Ms. Edwards moved from the position of account clerk in the accounts payable area to the position of account clerk in the payroll area.
 {¶ 4} "During her entire time as an account clerk, Jon Stoops was Edwards' supervisor. After deciding that she was unable to perform her duties satisfactorily, Mr. Stoops recommended to City Manager Dan Dubriel that Ms. Edwards be terminated. Ms. Edwards was given a Notice of Intent To Dismiss on February 5, 1999 and was subsequently dismissed. On February 12, 1999, Ms. Edwards filed administrative charges against Mr. Stoops and the City of Beavercreek alleging sexual harassment/hostile work environment. Mr. Stoops was absolved of liability for the harassment claim by an internal investigation.
 {¶ 5} "Ms. Edwards appealed the decision to terminate her employment to the Personnel Board of the City of Beavercreek pursuant to the City's Personnel Rules Regulations. The Board of Personnel Appeals restored Ms. Edwards to her job classification of account clerk and imposed a sixty-day suspension for displaying a poor attitude. When she returned to work, Ms. Edwards was placed in the temporary position of Receptionist/Support Clerk receiving the same salary and benefits of her former position. In January, 2000, Mr. Stoops reassigned Ms. Edwards to that position on a permanent basis
 {¶ 6} "* * *
 {¶ 7} "Now before the Court is Beavercreek's Motion For Summary Judgment on the following Counts in Edwards' Amended Complaint: Count One for Sexual Harassment/Hostile Work Environment; Count Two for retaliation and reprisal by Beavercreek against Edwards for successfully challenging her wrongful termination; Count Three for retaliation and reprisal by Beavercreek against Edwards for taking leave in accordance with the Family and Medical Leave Act; and Count Four for retaliation and reprisal by Beavercreek against Edwards for participating in the formation of a union. Count Five of Edwards' Amended Complaint for retaliation and reprisal by Beavercreek against Edwards for filing a workers compensation claim has been voluntarily dismissed by Edwards."
 {¶ 8} On appeal, Edwards brings to us the following assignments of error:
 {¶ 9} "1. The trial court erred and abused its discretion by Granting the Defendant-Appellees' motion for summary judgment on the issue of sex Harassment/hostile work environment, a form of Sex Discrimination.
 {¶ 10} "2. The trial court erred and abused its discretion by granting the Defendant-appellees' motion for summary judgment on the issue of retaliation and reprisal claims.
 {¶ 11} "1) As to Plaintiff-appellant's harassment and eventual termination in the wake of her utilization of intermittent family and medical leave to care for ailing children.
 {¶ 12} "2) As to Plaintiff-appellant's Termination in the wake of signing a union affiliation card.
 {¶ 13} "3) As to Plaintiff-appellant's denial of a return to her original job classification as ordered by the Beavercreek board of personnel appeals, the assignment of her to a receptionist position, and the failure to properly restore her job benefits."
 {¶ 14} As to the first assignment of error, the trial court set forth a full factual and legal analysis, as follows:
 {¶ 15} "Sexual Harassment/Hostile Work Environment Claim
 {¶ 16} "In analyzing sexual harassment claims, Ohio courts look `to the statute, R.C. 4122.02(A), to the administrative counterpart [O.A.C. 4112-5-05(J)], and to federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42 U.S.C.'Anania v. Daubenspeck Chiropractic (1998), 129 Ohio App.3d 516, 519. According to Ohio law, there are five elements of a claim of sexual harassment/hostile work environment: `(1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating hostile, or offensive work environment; and (5) the existence of respondeat superior liability.' Id. at 521.
 {¶ 17} "The Court may not make credibility determinations, weigh evidence or draw inferences from the facts of the case when analyzing the elements of a sexual harassment claim for Rule 56 purposes. Reeves v.Sanderson Plumbing Products, Inc. (2000), 530 U.S. 133, 150. These are fact-finder functions. Id.
 {¶ 18} "For the purpose of Summary Judgment, Edwards satisfies the first two elements of a sexual harassment/hostile work environment claim. She is female and is therefore a member of a protected class. In addition, she has indicated that she was the subject of unwelcome harassment by Jon Stoops.
 {¶ 19} "Regarding the third element of a sexual harassment claim, sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. O.A.C. 4112-5-05(J). To be of a sexual nature, verbal conduct must be gender related. 1997 WL 88149 (Ohio Civ. Rts. Com., Complaint No. 6628). For example, referring to a female employees as `bitches' is not verbal conduct of a sexual nature. Id. Also, while sexual harassment doesn't have to take the form of sexual advances or incidents with sexual overtones, it must be harassment that would not occur but for the sex of the employee. Williams v. General Motors Corp. (6th Cir., 1999)187 F.3d 553, 565; 1997 WL 392466 (Ohio Civ. Rts. Com., Complaint No. 7400). Each statement or action that Edwards claims to be sexual harassment will be analyzed to determine if this third element is satisfied.
 {¶ 20} "First, Edwards claims that Jon Stoops once said that he was going to drop-kick Edwards out of his office. (Edwards Depo., p. 180). Edwards does not remember when this statement was made or if the statement was related to any specific situation. (Id. at p. 181). Edwards further states that this is the only physical threat that Stoops ever made to her. (Id. at p. 186). This statement made by Stoops is not a sexual advance or a requests for sexual favors. It is also not gender related because the comment does not involve use of gender specific words and the activity indicated could apply to either gender. This comment does not satisfy the third element of a sexual harassment claim.
 {¶ 21} "Next, Edwards claims that Stoops made several demeaning remarks about her hair color including asking her what color her hair actually was. (Id. at p. 198-201). Edwards claims that the references to her hair color insinuated that she was dumb but that Stoops never told any jokes pertaining to blonde females. (Id.) These remarks are not sexual advances or a requests for sexual favors and the remarks about hair color could apply to either gender. In addition, Edwards understood the comments to refer to her intelligence and not her gender. Therefore, the comments are not gender specific and do not satisfy the third element.
 {¶ 22} "Next, Edwards claims that Stoops once told her, in a conversation relating to payroll, that she `f'ed' things up. (Id. at p. 205). This comment is not a sexual advance or request for a sexual favor. It is also not gender related because it does not refer to a specific gender and could have the same connotation regardless of the gender of the person to whom it is said. This comment does not satisfy the third element.
 {¶ 23} "Next, Edwards claims that Stoops regularly used the phrase `smart person would' which she felt insinuated that she was too stupid to do something. (Id. at p. 204). Again, this phrase is not a sexual advance or a request for a sexual favor. Also, the phrase refers to intelligence and not to gender and was understood that way by Edwards. This comment does not satisfy the third element.
 {¶ 24} "Next, Edwards claims that Stoops used the phrase `what the hell is this' several times in work related discussions. (Id. at p. 206). Again, this comment is not a sexual advance, not a request for a sexual favor and not related to gender. Therefore, it does not satisfy the third element.
 {¶ 25} "Next, Edwards claims that Stoops once told her that she did not `have to bend over every time a police officer came over and needed something.' (Id. at p. 207). This comment was made in Stoops' office after a police officer had come to Edwards and asked for a document to be signed and Edwards brought the document to Stoops for his signature. (Id. at 207-10). Given the context within which Edwards claims the comment was made, it is not a sexual advance or a request for a sexual favor. It is also not gender related. The comment is a figure of speech commonly used regarding how one person reacts to a request from another. This comment does not satisfy the third element.
 {¶ 26} "Finally, Edwards claims that Stoops regularly made comments about her last name being different from time to time. (Id. at 221). During her employment at Beavercreek, Edwards held several different last names. (Id. at 213-21). This comment is not a sexual advance or a request for a sexual favor. Considering the comment in a light most favorable to Edwards, the comment could refer to the fact that Edwards had several different marriages. Having several marriages is not gender related because a male could also have several different marriages. Therefore, the comment is not gender related and does not satisfy the third element.
 {¶ 27} "In summary, an analysis of all of the evidence presented by Edwards regarding her sexual harassment/hostile work environment claim indicates that none of it satisfies the definition of sexual harassment. Therefore, Edwards has not satisfied the third element of a sexual harassment claim.
 {¶ 28} "The fourth element of a sexual harassment claim requires the presence of a hostile or offensive work environment. In determining whether a work environment is hostile, courts examine the following circumstances: (1) the frequency of the discriminatory conduct; (2) it's severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc. (1993),510 U.S. 17, 23-24; cited with approval, Ciliotta v. Merrill Lynch
(1997), 121 Ohio App.3d 324, 328.
 {¶ 29} "Since none of the comments or actions were discriminatory conduct satisfying the third element, the fourth element of a sexual harassment claim cannot be analyzed. The Court will move to an analysis of the fifth element regarding the existence of respondeat superior liability.
 {¶ 30} "The fifth element of a sexual harassment claim requires proving the existence of respondeat superior liability. The common-law doctrine of respondeat superior holds an employer liable for an employee's actions committed during the scope of employment. In looking for respondeat superior liability, courts have concluded that an employer may not be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences. Thompson v. Western Auto Supply Co., Ohio App.5th Dist. Case No. 95 CA-E-05-030, 1996 WL 488029 (May 8, 1996), citing Gary v.Long (1995), 59 F.3d 1391.
 {¶ 31} "In this case, Jan Stoops, an employee of the City of Beavercreek, was Edwards's supervisor and Edwards claims the comments were made during the course of Stoops' employment. Further, Edwards claims that she was not told about Beavercreek's sexual harassment policy. (Edwards Depo., p. 190-91). A copy of a City of Beavercreek sexual harassment policy dated November 15, 1993, is attached to Edwards' Deposition as Exhibit D. However, there is no Rule 56 evidence before the Court in this case that identifies this particular policy as one in effect at the City during the appropriate time and no evidence that this policy was part of a policy manual and available to Edwards. Therefore, there are genuine issues of material fact as to whether Beavercreek had a sexual harassment policy at the time in question; whether this policy, if it existed, was a part of Beavercreek's Policy Manual; and whether Edwards knew or should have known about the policy. Edwards has presented evidence that she did not know about the policy and Beavercreek has not presented evidence to the contrary. Therefore, there are genuine issues of material facts regarding the fifth element of a sexual harassment claim.
 {¶ 32} "To avoid Summary Judgment on this claim, Edwards citesReeves v. Sanderson Plumbing Products, Inc. for the proposition that discrimination cases, such as this one, are to be sent to a jury for consideration. 530 U.S. 133. However, the Supreme Court in Reeves said that whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors including the strength of plaintiff's prima facie case. Id. at 148-49. In this case, Edwards has not represented a sexual harassment claim that satisfies all of the required elements and thus has not presented a prima facie case."
 {¶ 33} We agree with the trial court that a pervasive hostile work environment claim is not supported by the facts or the law in this case and we hereby approve and adopt the trial court's opinion as our own.
 {¶ 34} As to the second assignment of error, including its three sub-assignments, the trial court analyzed the retaliation and reprisal claims in terms of both statutory causes of action and a common law cause of action, as follows:
 {¶ 35} "Retaliation and Reprisal Claims
 {¶ 36} "Remaining before the Court are three counts of retaliation and reprisal by Beavercreek, the employer, against Edwards, the employee, for engaging in protected activities. Claims that an employer has taken an adverse employment action against an employee for engaging in a protected activity may be based on existing statutes or a common-law cause of action.
 {¶ 37} "A. Statutory Cause of Action for Retaliation and Reprisal
 {¶ 38} "Title VII of the Civil Rights Act of 1964, Title42 U.S.C. § 2000e-3, and Ohio's corresponding `civil rights' statute, R.C. Chapter 4112, make it unlawful to retaliate against a person because they have participated in a protected activity. Title42 U.S.C. § 2000e-3 provides that `It shall be an unlawful employees practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' Ohio R.C. 4112.02(I) states that it is an unlawful discriminatory practice `for any person to discriminate . . . against any other person because that person has made a charge, testified, . . . or participated . . . in any investigation, proceeding, or hearing under sections 4112.02 to 4112.07 of the Revised Code.' In addition, `Federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq. Title 42, U.S.C. Code, is generally applicable to cases involving alleged violations of Chapter 4112.' Plumbers Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.
(1981), 66 Ohio St.2d 192, 196.
 {¶ 39} "To state a statute-based claim for retaliation, the plaintiff must establish (1) that she engaged in activity protected by the statute; (2) that the exercise of the protected right was known to the defendants; (3) that defendants thereafter took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. Nghuyen v. Cityof Cleveland (6th Cir., 2000), 229 F.3d 559, 563 (6th Cir. 2000); for state law see Peterson v. Buckeye Casings (1999), 133 Ohio App.3d 715,727. Once a plaintiff establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. Id. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext. Id.
 {¶ 40} "Courts have established that the adverse employment action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment. Peterson at 727. The purpose of the retaliation claim is to counter the chilling effects of the employer's adverse conduct and protect employees who have asserted their rights. EEOC v. Outback Steakhouse of Florida, Inc. (N.D.Ohio., 1999),75 F. Supp.2d 756, 760. The `material' requirement is based upon preventing the chilling effect in that employees who do not suffer `material' action are not likely to be chilled in making complaints about discrimination or harassment. Id. at 759.
 {¶ 41} "Regarding the `material' requirement, courts have held that changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action. Peterson at 727. Factors to be considered when determining whether an employment action was materially adverse include: termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. Id. Finally, an employee may not be terminated because he has opposed unlawful employment discrimination (the `opposition clause') or participated in anti-discrimination proceedings (the `participation clause'). Pulver v.Rookwood Highland Tower Investments, Hamilton App. No. C-950361 and C-950429, 1997 WL 133422 (Mar. 26, 1997), unreported; dismissed, appeal not allowed, 79 Ohio St.3d 1482.
 {¶ 42} "1. Statutory Cause of Action — Count II: Appealing Termination
 {¶ 43} "In Count II, Edwards claims that, in retaliation for successfully challenging her wrongful termination, she was denied a return to her original job classification, unemployment benefits were unilaterally deducted from her back pay, health benefits were not restored promptly, and PERS benefits with retroactive credit were not restored promptly.
 {¶ 44} "The first element of a statutory claim is not satisfied because Edwards' assertion of her appeal rights is not an activity protected by Title VII or R.C. 4112. Edwards' right to appeal is an administrative right provided by the City of Beavercreek. Appeal of this matter should be exhausted in administrative channels before coming to Common Pleas Court. Noernberg v. City of Brook Park (1980),63 Ohio St.2d 26, at syllabus. Since the first element is not satisfied, the Court need not examine the remaining elements of a statutory claim for retaliation regarding the appeal of Edwards' termination. There are no genuine issues of material fact regarding the first element of Count II and this count must fail as a matter of law.
 {¶ 45} "2. Statutory Cause of Action — Count III: Family Medical Leave Act
 {¶ 46} "Edwards claims that she was subjected to workplace harassment, in the form of demeaning and degrading remarks, in retaliation for her taking leave pursuant to the Family and Medical Leave Act of 1973 (FMLA). The harassment, according to Edwards, was intended to encourage her to resign from her job.
 {¶ 47} "The first element of a statutory cause of action for retaliation is satisfied because the record indicates that Edwards engaged in a protected right, the taking of leave pursuant to the FMLA.Parker v. Bank One N.A., Mont. App. Case No. 18573, 2001 WL 303284 (Mar. 30, 2001), appeal not allowed, 92 Ohio St.3d 1450. Since the leave was granted, the employer knew that Edwards exercised the protected right, and therefore, the second element is satisfied. To satisfy the third element, Edwards must show that her employer took an adverse employment action that materially affected the terms and conditions of her employment.
 {¶ 48} "The making of remarks is not a termination of employment, a demotion, a loss of benefits, or a change in responsibilities. Therefore, the alleged making of demeaning and degrading remarks are not changes in material terms and conditions of employment. As a result, there are no genuine issues of material fact regarding the third element of the statutory claim regarding the taking of FMLA leave and Beavercreek is entitled to have this claim dismissed.
 {¶ 49} "3. Statutory Cause of Action — Count IV: Union Activity
 {¶ 50} "Edwards claims that she was discharged in retaliation for signing a union affiliation card. Engaging in union activity is protected by R.C. 4117.11(A)(1) and not by Title VII or R.C. 4112. The remedies for violation of R.C. 4117.11 are not found in Common Pleas Court but are to be sought from the state employment relations board. Franklin County LawEnforcement Ass'n v. Fraternal Order of Police, Capital City Lodge No. 9
(1991), 59 Ohio St.3d 167, 169. Therefore, as a matter of law, Edwards may not bring this claim in Common Pleas Court.
 {¶ 51} "The Court does not need to reach the element of proximate cause for each of the statute-based claims because all of these claims fail for other reasons.
 {¶ 52} "B. Common Law Cause of Action for Retaliation and Reprisal
 {¶ 53} "The Ohio Supreme Court has established a common-law cause of action for retaliation by an employer. Greeley v. Miami ValleyMaintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 233-34. The Greeley common-law cause of action is available when an `employee-at-will' has been terminated or subjected to employment discipline in violation of a `clear public policy.' Id. Courts have emphasized that this cause of action is limited to `employees-at-will.' Haynes v. Zoological Soc. ofCincinnati (1995), 73 Ohio St.3d 254, at syllabus.
 {¶ 54} "Further, the identifying characteristic of an `employment-at-will' relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. Id. For example, a union employee is not an employee-at-will. Id.
 {¶ 55} "`Clear public policy' as used by the Supreme Court is not limited to public policy expressed by the General Assembly in the form of statutory enactment, but may also be discerned as a matter of law based on other sources, such as the Constitutions of the United States and Ohio, administrative rules and regulations, and the common law. Painterv. Graley (1994), 70 Ohio St.3d 377, at paragraph 3 of syllabus.
 {¶ 56} "The four elements of a Greeley common-law cause of action for retaliation against an `employee-at-will' are: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing or disciplining employees under the circumstances at hand would jeopardize the public policy (the jeopardy element); (3) plaintiff's dismissal or discipline was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the causation element). Collins v. Rizkana (1995),73 Ohio St.3d 65, 74, reconsideration denied, 74 Ohio St.3d 1409.
 {¶ 57} "There is no common law tort for wrongful discharge and, therefore, a claim for wrongful discharge does not exist absent a Greeley public policy exception. Stephenson v. Yellow Freight Sys., Inc., Franklin App. Case No. 99AP-77, 1999 WL 969817, (Oct. 26, 1999), dismissed, appeal not allowed, 88 Ohio St.3d 1432. Greely claims are limited to at-will employees. Haynes v. Zoological Soc. of Cincinnati (1995),73 Ohio St.3d 254. The identifying characteristic of an employment-at-will relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. Id. For example, a union employee is not an employee-at-will. Id.
 {¶ 58} "Turning now to the case at bar, Edwards was, at the time the claims arose, an employee of the City of Beavercreek, a political subdivision of the State of Ohio and therefore subject to the provisions of the Personnel Rules and Regulations of the City of Beavercreek and the administrative procedures set forth in R.C. 2506. Her employment was subject to City personnel policies and Ohio statutes and was therefore not at-will. Breitenstein v. City of Moraine, Mont. App. Case No. 13375, 1992 WL 317444 (Nov. 5, 1992), jurisdictional motion overruled,66 Ohio St.3d 1440. Therefore, Edwards, as a matter of law, does not have a common-law cause of action for retaliation and reprisal.
 {¶ 59} "Conclusion
 {¶ 60} "All of the claims in Edwards' Amended Complaint were either dismissed or do not survive Beavercreek's Motion for Summary Judgment. Edwards' claim for retaliation by Beavercreek because she filed a workers compensation claim has been voluntarily dismissed.
 {¶ 61} "The sexual harassment claim fails as a matter of law because Edwards has not presented evidence that, when construed most strongly in her favor, satisfies all of the elements of a sexual harassment/hostile work environment claim. Edwards' retaliation claims pursuant to a common-law cause of action for retaliation fail as a matter of law because she was not an employee-at-will.
 {¶ 62} "All of the remaining statutory claims for retaliation and reprisal fail. The statutory claim regarding retaliation because Edwards appealed her termination fails because, although her appeal rights are protected by administrative procedure, they are not protected by Title VII or R.C. 4112. The statutory claim regarding retaliation because Edwards took FMLA leave fails because the action she alleges was taken by the City does not rise to the level of materially affecting the terms and conditions of her employment. The statutory claim regarding retaliation because of Edwards' union activity fails because, although engaging in union activity is protected, it is not protected by Title VII or R.C. 4112.
 {¶ 63} "Defendant's Motion for Summary Judgment is GRANTED. As a result, all of the claims remaining in Edwards' Amended Complaint are DISMISSED. There is no further cause for delay."
 {¶ 64} Again, we agree with the trial court's analysis and approve and adopt its opinion as set forth above as our own.
 {¶ 65} The trial court did not feel it was necessary to elaborate on two of her reprisal claims, to-wit: that she was wrongly ordered back to a different job than the one she had been terminated from, and the deduction from her back pay of the unemployment benefits she had received. We find that she waived the first claim because she testified during her deposition that she did not really want the decision of the Board of Personnel Appeals of Beavercreek to be literally interpreted to place her back in her former position in charge of payroll, undoubtedly because of the difficulties she had with her supervisor in that position. Edwards depo, pgs. 154-55, 227-29.
 {¶ 66} As to the deduction of her unemployment benefits from her back pay award, we note, as pointed out by the appellant in her counsel's citation of supplemental authority filed with this court, that federal courts, including the Sixth Circuit Court of Appeals and the Southern District Court of Ohio, have ruled that unemployment benefits should not be deducted from back pay awards in Title VII cases. Rasimas v. MichiganDept. of Mental Health (1983), 714 F.2d 614, 628; Jones v. Ohio Dept. ofMental Health (1987), 687 F. Supp. 1169. We further note, as did the trial court here, that federal case law interpreting Title VII Civil Rights Action 1964 is generally applicable to cases involving alleged violations of Ohio's laws against discrimination. R.C. Chapter 4112. However, the case before us was not originally filed under the United States Title VII Civil Rights Act, but was explicitly stated as a claim in the amended complaint of a hostile work environment in violation of protection against discrimination against women "as provided under Ohio law." Furthermore, the Supreme Court of Ohio has explicitly and unequivocally held that back pay awards must be reduced by unemployment benefits received by the claimant. State ex rel Guerrero v. Ferguson
(1981), 68 Ohio St.2d 6, 22 O.O.3d 98. We have not found from our own research that this decision has either been overruled or modified. Indeed, the decision has been adhered to by the Ohio Supreme Court and followed by Ohio Courts of Appeals. State ex rel. Lake Cty. Bd. ofCommrs. (1993), 67 Ohio St.3d 160, 163; Mers v. Dispatch Printing Co.
(1988), 39 Ohio App.3d 99, 104. Thus, until the Ohio Supreme Court rules otherwise, we are bound to approve the reduction of Edwards' back pay award by the total amount of the unemployment benefits she received after her discharge and before her reinstatement.
 {¶ 67} All the assignments of error are overruled and the judgment is affirmed.
BROGAN, J. and FAIN, J., concur.