File Name: 06a0769n.06

Filed: October 17, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-4410

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

AL MARTINEZ,

    Plaintiff-Appellant,

v.

LIMITED BRANDS, INC. et al.,

    Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:    MARTIN and DAUGHTREY, Circuit Judges; REEVES, District Judge.[*]

    BOYCE F. MARTIN, JR., Circuit Judge. Al Martinez appeals the district court's dismissal

of his Title VII suit against his former employer, Limited Brands, Inc., pursuant to Limited's motion

for summary judgment. Martinez, who is of Mexican origin, claimed that three adverse employment

actions taken against him were the product of illegal discrimination on the basis of race, color, and

national origin: (1) the company's failure to promote him to the position of Vice President of Loss

Prevention, (2) his subsequent termination, and (3) the denial of his severance package. For all three

claims, the district court assumed that Martinez made out a prima facie case under Title VII, but

found that Limited offered legitimate, non-discriminatory bases for each decision, which Martinez

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

failed to show were pretextual. For the reasons discussed below, we **AFFIRM** the decision of the district court in all respects.

I

The district court elaborately set forth the facts of the case, and thus we will not repeat them here, but will only refer to them where relevant to our analysis below. *See generally* D. Ct. Op., Sept. 22, 2005, at 1-7. This Court reviews a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56). Weighing of the evidence or making credibility determinations are prohibited at summary judgment — rather, all facts must be viewed in the light most favorable to the non-moving party. *Id*.

II

Martinez sought to advance his case with indirect evidence of discrimination under the *McDonnel Douglas-Burdine* burden shifting approach. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this approach, a plaintiff who cannot present direct evidence of discrimination can establish a prima facie case of discrimination where he can show: (1) that he was a member of a protected

class; (2) that he was qualified for the position in question; (3) that he was subjected to an adverse job action; and (4) that he was replaced by a person outside the protected class, or treated less favorably than a similarly situated person outside the protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Where a plaintiff can make such a showing, "a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. If the defendant articulates a legitimate, non-discriminatory basis for the decision, "then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id*. For a plaintiff to make a colorable showing of pretext and thus refute the legitimate, nondiscriminatory reason offered by the employer for its adverse employment action, the plaintiff must show that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc).

## A. Failure to Promote

Martinez alleges that Limited discriminated against him in violation of Title VII when the company failed to promote him from his position as "Director of Loss Prevention" to the newly created position of "Vice President for Loss Prevention." The new Vice President was to be in charge of loss prevention across all of Limited's brands (including White Barn Candle Company, Victoria's Secret Stores, Inc., The Limited Stores, Inc., Express, LLC, and Bath and Body Works, Inc.), whereas Martinez, as "Director," had only been in charge of loss prevention for one of Limited's brands (Bath and Body Works, Inc.). Limited conducted a nationwide search for its new

vice presidency. Martinez was interviewed for the position, but was not chosen to be a finalist. Of the two finalists, Defendant Paul Jones was ultimately selected and hired on June 17, 2002.

Applying the *McDonnell-Douglas/Burdine* test, the district court found that Martinez had made out a prima facie case for Limited's failure to promote him to the vice president position. We agree. Regarding the second step of the test, the district court found that Limited had offered a legitimate, non-discriminatory reason for hiring Jones instead of promoting Martinez, based on the company's determination after a thorough interview process that Jones was the more qualified candidate. Specifically, the district court credited Limited's assertion that Jones was more qualified because he had senior-level experience in areas other than loss prevention and he had previous experience running centralized loss prevention programs at companies similar to Limited. The district court also credited Limited's assertion that Martinez lacked a good working relationship with other departments within Limited. We again agree with the district court's finding that step two of the *McDonnell-Douglas/Burdine* test was met.

That leaves only step three, in which Martinez must show that Limited's legitimate non-discriminatory reason was pretextual. Martinez has been unable to make this showing. He seeks to challenge the veracity of the views of several decision makers, including an outside search firm, that Jones was better qualified for the position. The primary evidence Martinez adduces are the opinions of his peers and subordinates, who praised his abilities as Director of Loss Prevention for Bath and Body Works. Martinez also points to Limited's policy of promoting from within where possible. Ultimately, Martinez's argument boils down to a disagreement with the company about who the more qualified candidate was, without the benefit of evidence showing that Limited's

proferred basis was not supported by the facts or was not the actual basis for the decision. This is not a sufficient basis to establish pretext, as it is "the employer's motivation, not the applicant's perceptions, or even an objective assessment of what qualifications are required for a particular position, [that] is key to the discrimination inquiry." *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)).

Martinez makes two additional arguments to show pretext on his failure-to-promote claim, but both are unavailing. First, Martinez alleges that during his interview for the Vice President job, he was asked where he was from, and when Martinez replied that he had grown up in Texas, the interviewer asked him if he had grown up along the border. Martinez maintains that this question was offensive because it inferred that he had just come across the border. While this question could possibly be construed to reflect a discriminatory animus (as opposed to bald geographic ignorance — i.e., that not all Texas towns share a border with Mexico), at worst it reflects negatively on only one of seven interviewers who participated in the hiring decision, not including the independent search firm. In broader context, then, it is hard to see how this lone question would have undermined the legitimacy of the company's basis for hiring Jones instead of promoting Martinez. The district court correctly found that the comment was too isolated to support a finding of discrimination.

Second, Martinez claims that "statistical evidence" shows that he was one of only two Latino employees at the director level or above at Limited. This proffer was based solely on Martinez's personal observations of the ethnicity of Limited employees. Without more comprehensive data showing, at a minimum, the total number of director-level and above positions at Limited, the total number of Latinos who applied for those positions, and the total number of Latinos who in any given

year held those positions, Martinez's anecdotal proffer is not sufficient to support an inference of discrimination. Thus, we conclude that Martinez has failed to show that Limited's legitimate non-discriminatory reason for not promoting him to Vice President for Loss Prevention was pretextual.

**B. Termination**

Martinez contends that Limited's decision to terminate him on January 20, 2003 was also based on racial discrimination. We agree with the district court that Martinez has made out a prima facie case with respect to this termination claim. We also agree that Limited successfully rebutted the termination claim by offering a legitimate, non-discriminatory reason for Martinez's dismissal. Limited's explanation, in a nutshell, is that Martinez's work performance and relationships deteriorated after he was denied the promotion. Martinez failed to do work that he was asked to do by Jones (such as visiting more retail stores, especially those in "high shrink," or high theft, areas), he failed to attend centralized loss prevention meetings as requested by Jones, he failed to adequately train his subordinates, and he attended a conference in Phoenix which Jones had specifically asked him not to attend. Martinez also undermined Jones' authority by telling other members of Bath and Body Works' loss prevention group that Limited had decided *not* to centralize loss prevention, even after Jones had been hired and the centralization plan had already begun.

Martinez first attempts to counter Limited's proffered reason for his termination by demonstrating that he had been a very successful employee at Limited. The evidence he adduces, however, largely stems from Martinez's work *before* Jones was hired in June of 2002. Such evidence does little to counter the company's justification for Martinez's termination. There appears

to be little issue of material fact that Martinez's performance and behavior at work declined *after* he was denied the promotion, and thus Martinez's offer of proof fails to show that the reasons behind his termination were pretextual.

Martinez also attempts to refute the company's criticism of his work subsequent to the Jones hiring. He argues that because he had been given significant responsibility for a loss prevention initiative called "Project New View," this often created conflicts with the centralized meetings that Jones criticized him for missing. Similarly, Martinez introduced affidavits from co-workers indicating that he should not necessarily have been expected to be a contributor at some of the meetings with Jones, and thus his presence was not really required. Martinez also presented business reasons for his attending the conference in Phoenix. These amount to mere disagreements over the company's expectations of Martinez, suggesting at most that those expectations might have been unrealistic. Even if this Court were to think that an employer's expectations of an employee were too high or unfair, it does not necessarily follow that such expectations constitute a pretext for discrimination. *See Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000) (noting that "it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers"). If, perhaps, Martinez had demonstrated that these expectations were different from those of white employees, he would have a much stronger case. But it does not appear that he has unearthed any evidence of this nature.

Finally, Martinez points to communications between Jones and other Limited employees that indicate Jones was "out to get him." For example, Jones sent an email to Limited's director of human resources in which he wrote: "I want to speak with you about strategy with Al. I have only

three issues that are actionable. . . . I would like help in navigating the waters." Jones's statement that he had "only three items that are actionable," and the suggestion that he wanted advice on penalizing or marginalizing Martinez could potentially indicate that the reasons for the termination proffered by Limited were not the real reasons for the termination and were pretextual. This email from Jones, viewed in combination with the fact that Martinez had largely positive work reviews until Jones gained supervisory authority, is the closest Martinez can come to showing pretext. However, this email also has a perfectly non-pretextual explanation — namely, that Jones was seeking advice from the director of human resources on how to deal with an employee who had failed to meet several concrete job expectations, who had failed to listen to a superior's instructions, and who had manifested insubordinate behavior. No reasonable juror could find pretext based on the email standing alone. We thus hold that with respect to Martinez's termination claim, the district court's entry of summary judgment on behalf of Limited was warranted.

## C. Denial of Severance Package

At the same time he was informed of his termination, Martinez was offered a severance package. Before Martinez accepted the severance package, Limited learned that he had apparently entered into a two million dollar contract without company authorization. Limited therefore revoked the severance offer while it conducted an investigation into the matter. While the investigation was pending, Martinez accepted a position with another employer. This action, according to Limited, effected a cancellation of the severance contract, whose express terms stated that the terminated

employee would receive severance benefits only so long as he continued to be unemployed.[1]

The district court found that Martinez made out a prima facie case regarding Limited's withdrawal of its offer of his severance package, and Limited does not dispute this determination. It offers a nondiscriminatory basis for the revocation, namely that it temporarily withheld the severance package while it was investigating a contract entered by Martinez, and that during this time, Martinez accepted employment elsewhere. The district court found that this reason was not pretextual. Martinez challenges the district court's determination by claiming that he was in fact authorized to enter the two million dollar contract, because the agreement he entered into was simply a refinancing of an existing contract.

Even if Martinez's explanations of the contract are accurate, such explanations have no bearing on the pretext inquiry for this claim. Limited has not stated that it revoked the severance package because Martinez exceeded his authority as Director of Loss Prevention. Rather, Limited claims merely that it temporarily withheld the severance package while it investigated his actions. Martinez does not argue that such investigatory action by Limited somehow violated the terms of the severance agreement, and thus Limited's investigation appears to have been a legitimate basis for the temporary withholding. It appears from the record that had Martinez not accepted another

---

[1]The first substantive paragraph of the proposed separation agreement included the following language:

> Subject to the Executive's compliance with the terms and conditions contained in this Agreement, the Company agrees to pay the Executive . . . on a weekly basis for a period beginning . . . February 7, 2003 and ending upon the earlier of: (i) the Executive's receipt of twenty-six such payments or (ii) the Executive's *first day of employment with another employer*. (emphasis added)

job, and had Martinez been correct that he was authorized to enter into the two million dollar contract, he would have received the severance package. Thus, Martinez's claim as to Limited's discriminatory denial of his severance package must fail.

III

Martinez has failed to rebut Limited's legitimate non-discriminatory reasons for taking the three adverse employment actions of which he complains. This Court will therefore **AFFIRM** the district court's summary judgment order and dismissal of Martinez's claims.