NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0655n.06

No. 11-3108

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 20, 2012*

LEONARD GREEN, Clerk

ROBERT TRAPP,                                    )
                                                 )
      Plaintiff-Appellant,                       )
                                                 )
                                                 )  ON APPEAL FROM THE UNITED
v.                                               )  STATES DISTRICT COURT FOR THE
                                                 )  SOUTHERN DISTRICT OF OHIO
TSS TECHNOLOGIES, INC.,                          )
                                                 )
      Defendant-Appellee.                        )
                                                 )

Before: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

COOK, Circuit Judge. Plaintiff-Appellant Robert Trapp sued his former employer, TSS Technologies, Inc. ("TSS"), claiming that he was discharged because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. After discovery, TSS successfully moved for summary judgment. This appeal followed. We affirm.

I.

TSS hired Trapp in 1989 to work as a machinist. Eventually, TSS moved him off the shop floor and Trapp began working as a buyer, a job that entailed purchasing all the parts necessary for the manufacture of a given item. Trapp had no purchasing experience prior to his time at TSS. He worked as a buyer for two to three years before being moved to shop scheduler. Several promotions followed, and Trapp ultimately became TSS's Corporate Purchasing Manager.

Around 2005, TSS reorganized its purchasing operations and eliminated Trapp's position. The company nonetheless retained Trapp, making him a buyer/planner for TSS's medical division in the reorganized purchasing department. The district court described buyer/planners as "responsible not only for purchasing all of the parts needed to manufacture the item, but also for planning and managing the inventory of parts for that item so that the parts are on hand when needed." Trapp maintained his buyer/planner job until his discharge in 2009. Dean Phillips supervised Trapp during Trapp's final year at TSS.

The district court summarized the undisputed facts regarding TSS's business environment at the time of Trapp's discharge and the circumstances surrounding his termination:

> Beginning in about 2008, TSS experienced significant declines in sales and, while [Trapp] disputes that he was terminated in a [reduction in force, or "RIF"], the record does reflect a more or less ongoing process of staff reductions through and beyond the date of [Trapp]'s termination. Despite the overall downturn in sales, TSS picked up the Siemens Symbia business, which was a multi-million dollar account, in early 2009. Siemens required, however, that TSS assign two buyer/planners to the Symbia account. In order to fulfill this requirement, in February 2009, Phillips hired Andrew Wood and Robert Reid. Wood was 44 years old at the time and Reid was 41 years old. Phillips stated that he hired Wood and Reid for the Symbia account because of their previous experience as purchasers for businesses more sophisticated than TSS and because of their familiarity with advanced enterprise resource planning ("ERP") software.

> In the midst of this activity, TSS was also planning to transition to a new ERP system called Dynamics X. Phillips stated that Dynamics X was an advanced and sophisticated Windows-based system that focuses on materials requirements planning ("MRP"). In order to properly utilize Dynamics X, the buyer must be proficient in using Windows Excel. TSS's old ERP software was called Visibility and was a DOS-based system with limited functionality and flexibility. The decision to switch

2

to Dynamics X occurred in late 2008 or early 2009, but TSS did not go "live" with the system until 2010. All of the buyers, including Wood and Reid, received mandatory training on Dynamics X at the end of 2009.

Phillips testified that in April 2009, he received a directive from his manager, John McGuire, to reduce his staff by two persons. Phillips selected [Trapp] and Kevin Tate, who was in the SIE division, for termination. Phillips testified and stated in his affidavit that he chose to retain Wood and Reid, rather than [Trapp], because of their greater experience with advanced ERP systems and because of their experience purchasing for sophisticated organizations. In other words, Phillips wanted to retain Wood and Reid for essentially the same reasons he hired them. Phillips also testified that he wanted to keep Reid because he did not want to alarm Siemens by making significant changes in their purchasing team. On the other hand, Phillips stated that he believed that [Trapp]'s skills with ERP systems was [sic] weaker and, he noted, all of [Trapp]'s purchasing experience was with TSS. Thus, Phillips stated that he felt that Wood and Reid were best suited to fulfill the purchasing role for TSS going forward. Accordingly, Phillips elected to terminate [Trapp].

For his part, [Trapp] conceded that he was never subjected to derogatory remarks about his age by anyone at TSS. [Trapp] did testify that Phillips stated that another buyer, Kris Rowland, was "old and inflexible" after she was terminated in staff reduction that occurred a couple of months before his termination. Rowland was age 65 at the time. . . .

[Trapp] admitted in his deposition that he had no specific basis for believing that Phillips discriminated against him because of his age other than he felt that he could perform the purchasing duties as well as Wood and Reid. [Trapp] further admitted that he could not say that his education, purchasing experience, and experience with ERP systems was superior to Wood and Reid's. Finally, [Trapp] testified that it was his understanding that Wood and Reid were hired specifically to handle the Siemens Symbia account.

At the time of his discharge, Trapp was 60 years old with nine years of purchasing experience.

Trapp timely filed a complaint with the EEOC alleging that TSS terminated him because of his age. TSS denied the charge of discrimination and the EEOC did not act on Trapp's complaint within 60 days, entitling him to sue in federal court under the ADEA. 29 U.S.C. § 626(d)(1). Trapp's ensuing district court complaint alleged that his discharge violated the ADEA and the Ohio Civil Rights Act. Following discovery, TSS moved for summary judgment, the district court granted TSS's motion, and this appeal followed.

II.

The ADEA prohibits an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Where the plaintiff's claim relies on circumstantial rather than direct evidence of discrimination, ADEA cases proceed under Title VII's traditional burden-shifting framework, with the plaintiff bearing the initial burden to make out a prima facie case of discrimination. *See Schoonmaker v. Spartan Graphics Leasing*, 595 F.3d 261, 264 (6th Cir. 2010). Assuming the plaintiff carries that burden, it is then up to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the employer advances a legitimate justification, "the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination." *Id.*

ADEA plaintiffs can establish pretext by demonstrating that the proffered non-discriminatory reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

The district court assumed for the purposes of its opinion that Trapp could make out his prima facie case, but granted TSS's motion for summary judgment because Trapp did not meet his burden of production on pretext. We proceed under the same assumption and reach the same conclusion. As the district court observed, TSS's non-discriminatory justifications for terminating Trapp include 1) Trapp's inferior experience (as compared to Wood and Reid) with advanced ERP systems, to which TSS was switching at the time of Trapp's termination, and 2) TSS's desire to avoid alarming a new client (Siemens) by terminating the buyers that had been assigned to its account. Rather than attempting to rebut these asserted justifications, Trapp sidesteps TSS's actual explanations.

First, Trapp argues that he presented evidence sufficient for a juror to conclude that he possessed "superior qualifications for his job," specifically highlighting his experience with the Visibility software that TSS continued to use for several months following his discharge. But TSS did not ground its decision on overall buying/planning experience or proficiency with MRP software such as Visibility. Rather, TSS says that it preferred Wood and Reid because their superior

familiarity with advanced ERP systems better positioned them to handle the work TSS's buyer/planners would do in the future. Trapp does not dispute that he lacked proficiency in Microsoft Excel, a critical skill in using ERP software. TSS's decision to transition to ERP software prior to Trapp's discharge obviates his allegedly superior skill with the soon-to-be-replaced Visibility software.

ADEA plaintiffs cannot rebut an employer's proffered explanation by proposing their own rubric of relevant qualifications and testing the employer's conduct against it. *See Schoonmaker*, 595 F.3d at 268-69 ("[A plaintiff's] subjective views in relation to other coworkers, without more, are insufficient to establish discrimination."); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (holding in a Title VII case that when analyzing a plaintiff's pretext argument, "[w]e look to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position"); *Browning v. Dep't of the Army*, 436 F.3d 692, 696-97 (6th Cir. 2006) (quoting *Wrenn* with approval in an ADEA case). Plaintiffs must instead show that the explanation actually advanced has no basis in fact, did not actually motivate the employer, or was insufficient to justify termination. *See Wexler*, 317 F.3d at 576. Here, Trapp cites no evidence calling into question TSS's assertion that it was switching to ERP software and that his proficiency with advanced ERP systems lagged well behind Wood's and Reid's.

Trapp further posits that Reid could not have developed a "significant relationship" with Siemens by the time of Trapp's discharge, given that the discharge occurred just a few weeks after

6

TSS hired Reid. Here too, Trapp misses the point. As the district court noted, TSS's reasoning regarding Symbia focused not on the depth of Reid's relationship with Siemens or experience with Symbia, but rather on TSS's desire to avoid alarming Siemens—a relatively new client—by making changes to the TSS's staffing of the Symbia project so soon after Reid's initial assignment to it. Trapp's focus on the length of Reid's contact with Symbia does not refute TSS's asserted justification.

Trapp also points to inconsistencies in TSS's discharge explanations, calling its "shifting rationale" evidence of pretext. We find no support for this contention in the record. Trapp primarily relies on a letter that TSS's counsel sent to the EEOC in response to Trapp's complaint, in which TSS noted a number of deficiencies in Trapp's performance record. Trapp cites this letter as evidence that TSS initially argued that Trapp was fired for poor performance, but then changed its explanation to focus on Trapp's relative ERP proficiency and TSS's wish to avoid alarming Siemens.

Viewed in context, however, the EEOC letter provides no basis for viewing TSS's justifications as inconsistent. TSS's counsel submitted the letter in response to Trapp's assertion in his EEOC charge that "there were no issues with [his] performance" as a TSS employee. The function of the 290-word EEOC letter was not to provide a detailed explanation of the circumstances surrounding Trapp's termination, but rather to broadly deny Trapp's EEOC charge and highlight aspects of his record inconsistent with the assertions in his charge—including his claim that TSS had no concerns about his performance. Regardless, TSS's letter also states that the retained

7

buyer/planners "were more highly qualified" than Trapp, and that his discharge was part of a "reduction in force due to the recession and its impact on sales," both of which remain central to TSS's explanation for terminating Trapp. Even in the letter, then, TSS presented its reasons for terminating Trapp as multifold. Though later explanations expanded on the four-paragraph EEOC letter, TSS neither backtracked nor offered reasons inconsistent with any statements in the letter. The district court thus did not err in concluding that "TSS's reasons for terminating [Trapp] and retaining Wood and Reid have been consistent."

Moreover, a plaintiff cannot show pretext unless he demonstrates both that the employer's asserted reason was false, *and* that discrimination was the real reason. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Even if Trapp had presented evidence refuting TSS's stated reasons, he produced little evidence pointing to age as the real reason for his discharge. The only evidence Trapp cites suggesting age-motivation is his own deposition testimony that he overheard Phillips refer to *another* employee as "old and inflexible." Assuming Phillips made this statement, we find this isolated remark insufficient to satisfy Trapp's burden of production on pretext.

As the district court noted, this case is materially indistinguishable from our decision in *Schoonmaker*. The district court explained that, for reasons similar to those in *Schoonmaker*, Trapp's arguments cannot save his claims from summary judgment:

> In this case, like the employer in *Schoonmaker*, TSS used a somewhat informal process for implementing the RIF and neither Maguire nor Phillips consulted the layoff policy in deciding to terminate [Trapp]. Also like the employer

8

in *Schoonmaker*, TSS gave additional reasons for [Trapp]'s termination to the EEOC but nevertheless has consistently maintained that Wood and Reid's qualifications were superior to [Trapp]'s. Finally, like the supervisor in *Schoonmaker*, Phillips had to determine the best way for his department to function going forward and decided to value Wood and Reid's prior experience with sophisticated businesses and advanced ERP systems over [Trapp]'s long-term but relatively cloistered experience purchasing for TSS. Phillips was entitled to make that judgment and the record does not support an inference that this was an insufficient basis to motivate his decision. This record does not support an inference that [Trapp] was terminated because of his age.

Trapp's opening brief makes no effort to rebut the district court's analysis of *Schoonmaker*, and his efforts to distinguish it in his reply brief miss the mark. While Trapp argues that the employer in *Schoonmaker* followed its written layoff policy "as a practical matter," that does not disturb *Schoonmaker*'s point that informal layoff procedures do not inherently raise the specter of discrimination.

III.

Because Trapp neither cited evidence sufficient to call into question TSS's legitimate non-discriminatory reasons for terminating him, nor pointed to evidence suggesting that age was the true reason for his discharge, we affirm the district court's judgment.